# United States Court of Appeals

## For the First Circuit

No. 16-2106

MELVI AYDE DE LA CRUZ-ORELLANA; ALFREDO FLORES,

Petitioners,

v.

JEFFERSON B. SESSIONS, III,
United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Selya, and Lipez,
<u>Circuit Judges</u>.

<u>Stephen M. Born</u> on brief for petitioners.
<u>Carmel A. Morgan</u>, Trial Attorney, Office of Immigration Litigation, <u>Chad A. Readler</u>, Principal Deputy Assistant Attorney General, and <u>Shelley R. Goad</u>, Assistant Director, Office of Immigration Litigation, on brief for respondent.

December 18, 2017

**LIPEZ**, **Circuit Judge**.  Petitioners Melvi Ayde de la Cruz-Orellana and Alfredo Flores are a wife and husband who seek review of a decision denying their applications for voluntary departure to Guatemala and Mexico, respectively.  An Immigration Judge ("IJ") denied petitioners' applications on discretionary grounds, and the Board of Immigration Appeals ("BIA") affirmed the IJ's decision.  Petitioners timely sought review in this court.  We now dismiss for want of jurisdiction.

## I.

Alfredo Flores entered the United States without proper entry documentation in 1986, and Melvi Ayde de la Cruz-Orellana did the same three years later.[1]  The two met in California, and they were married in approximately 1994.  At the time of these immigration proceedings, they resided in Providence, Rhode Island, with their son, Jonathan Flores.

Appearing at a removal hearing in March 2009, the couple submitted written petitions to the IJ requesting cancellation of their removal and, alternatively, voluntary departure.[2]  To be statutorily eligible for cancellation of removal, petitioners had

---

[1] The record reflects some uncertainty over whether Cruz-Orellana entered the United States in 1989 or 1992.  As her date of entry is immaterial to our decision, we will accept arguendo Cruz-Orellana's representation that she entered the United States in 1989.

[2] The written petitions originally requested several other forms of relief that petitioners dropped before the IJ issued his decision.

to show (amongst other factors) that they had been "person[s] of good moral character" for at least ten years, and that their removal "would result in exceptional and extremely unusual hardship" to their United States-citizen child. 8 U.S.C. § 1229b(b)(1). They similarly had to show -- again, amongst other factors -- that they had been persons of good moral character for at least five years to be statutorily eligible for voluntary departure. 8 U.S.C. § 1229c(b)(1). Statutory eligibility, however, does not guarantee success. The IJ could deny petitioners' requests for cancellation of removal and voluntary departure as a matter of discretion. See 8 U.S.C. §§ 1229b(b)(1), 1229c(b)(1) (stating that the Attorney General "may" cancel an immigrant's removal and "may" permit him to depart voluntarily).

In an oral decision in November 2014, the IJ rejected petitioners' requests for both forms of relief. First, he found that Cruz-Orellana had "given false testimony for the purpose of obtaining" immigration benefits, and was therefore not a person of good moral character for cancellation of removal purposes. 8 U.S.C. § 1101(f)(6). Specifically, Cruz-Orellana completed an application for asylum in 1993, representing that she had been tortured by guerrillas in Guatemala, and was married to a guerrilla commandant known as El Gallo Giro. She reaffirmed the accuracy of her application when she appeared before an asylum officer in

August 2007.  However, in a hearing before the IJ, Cruz-Orellana admitted that the information in her asylum application was false.

In denying cancellation of removal to Cruz-Orellana, the IJ found that she could not benefit from the "recantation doctrine."  That doctrine provides that false testimony will not prevent an immigrant from establishing her good moral character when she timely recants the false testimony.[3]  See Matter of Namio, 14 I. & N. Dec. 412, 414 (BIA 1973); Matter of M-, 9 I. & N. Dec. 118, 119 (BIA 1960).  According to the IJ, Cruz-Orellana did not recant her false testimony in a "timely" manner.  The IJ then offered another reason to reject Cruz-Orellana's request for cancellation of removal, which also applied to Flores's request for the same.  The couple could not show that their son would incur "exceptional and extremely unusual hardship" upon their removal, a prerequisite to obtaining relief.  8 U.S.C. § 1229b(b)(1)(D).

Turning to Cruz-Orellana's request for voluntary departure, the IJ began by incorporating his prior discussion "regarding her false oral testimony before the Asylum Officer." He considered the false testimony "a significant factor that

---

[3] There is some disagreement in the case law over what constitutes a "timely" recantation.  Some courts have focused on the voluntariness of the recantation, while others assess timeliness based on the duration between the false testimony and the recantation.  See, e.g., Ruiz-Del-Cid v. Holder, 765 F.3d 635, 640-41 (6th Cir. 2014).  As we lack jurisdiction to review the IJ's discretionary decision to deny Cruz-Orellana voluntary departure, we have no occasion to weigh in on the matter.

- 4 -

reflects upon her bad character."  The IJ then weighed Cruz-Orellana's false testimony against certain positive factors and declined to grant her voluntary departure as a matter of discretion.[4]  Lastly, the IJ also denied voluntary departure to Flores as a matter of discretion.  In doing so, the IJ relied in part upon a police report from a 2000 domestic violence incident involving Flores and Cruz-Orellana.

Petitioners appealed the IJ's decision to the BIA.  The BIA first noted that petitioners' son, Jonathan, had turned 21 during the pendency of their appeal, leaving them unable to show that their removal would result in exceptional and extremely unusual hardship to their "child."  8 U.S.C. § 1101(b)(1) (defining "child" as, in relevant part, "an unmarried person under twenty-one years of age").  It then upheld the IJ's discretionary decisions to deny petitioners' requests for voluntary departure.

In their petition for review to this court, petitioners concede that their son's age makes them ineligible for cancellation

---

[4] The IJ did not expressly address whether Cruz-Orellana was statutorily eligible for voluntary departure, though we could infer a finding of statutory ineligibility based on his determination that Cruz-Orellana was not a person of good moral character for cancellation of removal purposes.  See 8 U.S.C. §§ 1229b(b)(1)(b), 1229c(b)(1)(b) (establishing "good moral character" requirements for both forms of relief).  In any event, since the IJ declined to afford Cruz-Orellana voluntary departure as a matter of discretion, his finding regarding statutory eligibility is ultimately immaterial.  As discussed infra, IJs have discretion to deny immigrants the privilege of voluntary departure even when they are statutorily eligible for the benefit.

of removal.  They maintain, however, that the IJ erred in denying their requests for voluntary departure.  Cruz-Orellana argues that the recantation doctrine should have prevented the IJ from considering her false testimony in denying her voluntary departure as a matter of discretion.  Flores asserts that the IJ's reliance on the 2000 domestic violence police report violates due process because it contains hearsay.  We do not reach the merits of these contentions, however, because we lack jurisdiction to do so.

## II.

Our jurisdiction to review decisions denying immigrants the privilege of voluntary departure is narrowly circumscribed. See Arias-Minaya v. Holder, 779 F.3d 49, 52 (1st Cir. 2015). Indeed, we are statutorily prohibited from reviewing the "denial of a request for an order of voluntary departure," 8 U.S.C. § 1229c(f); see also 8 U.S.C. § 1252(a)(2)(B)(i), unless the petition for review involves "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D).  A "bare allegation of either a constitutional shortfall or legal error" is not sufficient. Ayeni v. Holder, 617 F.3d 67, 71 (1st Cir. 2010).  To confer jurisdiction, "the claim of constitutional or legal error must at least be colorable."  Id.; see also Arias-Minaya, 779 F.3d at 52 ("Whether a claim fits within the confines of one of these exceptions depends on substance, not on form.").   This jurisdictional limitation is fatal to petitioners' claims.

- 6 -

## A. Petitioner Cruz-Orellana

Cruz-Orellana's reliance on the recantation doctrine misapprehends the relevance of that doctrine to the IJ's discretionary determination to deny her the benefit of voluntary departure.  Specifically, she fails to appreciate the distinction between an IJ's finding of statutory ineligibility, and an IJ's decision to deny relief as a matter of discretion.

An IJ may deny an immigrant's request for voluntary departure by finding that the immigrant is statutorily ineligible for that relief.  As discussed supra, an immigrant who "has given false testimony for the purpose of obtaining" immigration benefits is statutorily ineligible for voluntary departure, unless she had timely recanted her testimony.  See 8 U.S.C. §§ 1101(f)(6), 1229c(b)(1)(B); Matter of Namio, 14 I. & N. Dec. at 413-14.  If the immigrant timely recanted her false testimony, the recantation doctrine prevents the IJ from finding her statutorily ineligible based on the testimony.

However, even if the IJ determines that the immigrant is statutorily eligible for voluntary departure -- or assumes that she is eligible -- the IJ can weigh the equities and deny relief as a matter of discretion.  See 8 U.S.C. § 1229c(b)(1) (stating that the Attorney General "may" permit an immigrant to depart voluntarily); Arias-Minaya, 779 F.3d at 51-52.  Indeed, this was the approach taken by the IJ here.  He denied voluntary departure

to Cruz-Orellana under his discretionary authority, not based on her statutory ineligibility for the relief.

When an IJ denies voluntary departure as a matter of discretion, the recantation doctrine does not prevent him from using an immigrant's timely recanted false testimony as a basis for denying relief. One of the seminal recantation-doctrine cases demonstrates this principle precisely. In Matter of M-, the BIA applied the recantation doctrine and found that the immigrant had timely recanted his prior false testimony. 9 I. & N. Dec. at 119. He was, therefore, "not barred . . . from establishing his good moral character," and was "statutorily eligible for [voluntary departure]." Id. Nonetheless, the BIA upheld the denial of the immigrant's "application for voluntary departure . . . as a matter of administrative discretion." Id. at 120. While the recantation doctrine made the immigrant statutorily eligible for voluntary departure, it did not prevent the BIA from subsequently denying voluntary departure as a matter of discretion.

Thus, even if the application of the recantation doctrine made Cruz-Orellana statutorily eligible for voluntary departure, her recantation would become only one factor among many for the IJ to consider in weighing the equities of her request for voluntary departure. Since the IJ was not bound by the recantation doctrine in denying voluntary departure to Cruz-Orellana as a matter of discretion, the substance of her claim does not involve

- 8 -

a question of law under 8 U.S.C. § 1252(a)(2)(D).  Instead, she effectively asks us to review the IJ's purely discretionary decision, made after weighing the equities of the situation, to deny her voluntary departure regardless of her statutory eligibility for relief.  This is exactly the type of decision that we lack jurisdiction to review.

**B. Petitioner Flores**

Flores asserts that the IJ violated his due process rights by relying on a police report that contained hearsay in denying him voluntary departure as a matter of discretion. Flores's invocation of the Due Process Clause does not create a constitutional claim for the purpose of 8 U.S.C. § 1252(a)(2)(D). We have held repeatedly that the "privilege" of voluntary departure involves "no property interest" and "no cognizable liberty interest" because it is "essentially discretionary."  Jupiter v. Ashcroft, 396 F.3d 487, 492 (1st Cir. 2005); see also Kandamar v. Gonzales, 464 F.3d 65, 69 (1st Cir. 2006).  Since "[a] due process claim requires that a cognizable liberty or property interest be at stake," Flores's petition fails to raise a colorable constitutional claim.  Kandamar, 464 F.3d at 69 (quoting DaCosta v. Gonzales, 449 F.3d 45, 50 (1st Cir. 2006)).  We therefore lack jurisdiction to review the IJ's denial of voluntary departure.

### III.

For the foregoing reasons, we **dismiss** the petitions for want of jurisdiction.