# United States Court of Appeals
## For the First Circuit

No. 19-1516

NOVA ANTHONY LEE,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
Selya and Kayatta, Circuit Judges.

Susan M. Pires on brief for petitioner.
Vanessa M. Otero, Trial Attorney, Office of Immigration Litigation, U.S. Department of Justice, Joseph H. Hunt, Assistant Attorney General, Civil Division, and Anthony P. Nicastro, Assistant Director, Office of Immigration Litigation, on brief for respondent.

September 22, 2020

**KAYATTA**, **Circuit Judge**.  Petitioner Nova Anthony Lee is a Jamaican national who entered the United States on a B2 visa in June 2014 and failed to leave when the visa expired in December of that year.  Lee petitions for review of determinations by the immigration judge and Board of Immigration Appeals ("BIA") denying his withholding of removal claim and his bid for voluntary departure.  He also seeks review of denials of his motions for a continuance and for a remand.  For the reasons explained below, we deny Lee's petition for review.

## I.

Petitioner Lee was born into a moderately wealthy family in Jamaica and operated a retail business there.  At some point in early 2014, while he was still in Jamaica, Lee and his cousin were involved in an altercation with an individual referred to as "Mr. Wright."  Lee was detained by police as a result of the fight, but the charges against him were ultimately dismissed.  Wright then sued Lee for medical expenses resulting from the fight and threatened Lee in some way, which Lee reported to the police.

Lee traveled to the United States on a B2 visa in June 2014 and failed to return to Jamaica.  Over the next few years he married a United States citizen, Ronjel Lee, and started a family in the United States.  He has largely been employed since he arrived.

In August 2018, Lee was arrested in Connecticut on charges of assault on a pregnant person, disorderly conduct, and risk of injury to a child based on alleged conduct involving his wife and her fourteen-year-old daughter. When subsequently served with a notice to appear in immigration court, Lee requested withholding of removal and voluntary departure. On his behalf, his wife filed an I-130 petition (a visa petition that a U.S. citizen or legal permanent resident may file on behalf of an alien relative as the first step in that relative's application for a green card through adjustment of status).[1] The immigration judge ruled against Lee on his withholding of removal and voluntary departure claims and denied his motion for a continuance to seek adjustment of status. Lee appealed to the BIA. While his appeal was pending, Lee's August 2018 charges in Connecticut were dropped, and his I-130 petition was approved. He moved to remand his case to the immigration judge based on these new developments. The BIA rejected Lee's appeal and his motion to remand.

## II.

Generally speaking, when the BIA affirms the immigration judge's holdings but adds its own analysis -- as it did here -- we

---

[1] U.S. Citizenship & Immigr. Servs., I-130, Petition for Alien Relative, https://www.uscis.gov/i-130 (last visited September 18, 2020).

review both decisions as a unit.  Ang v. Holder, 723 F.3d 6, 10 (1st Cir. 2013).

## A.

Lee first challenges the denial of his request for withholding of removal.  An alien is eligible for withholding of removal to a country "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A); Lopez Perez v. Holder, 587 F.3d 456, 463 (1st Cir. 2009) ("To prevail on a claim for withholding of removal, an alien must show that, if returned to her native land, she will more likely than not face persecution on account of a statutorily protected ground.").  We review the agency's factual findings on a withholding of removal claim under the substantial evidence standard.  Agustin v. Whitaker, 914 F.3d 43, 45 (1st Cir. 2019).

Lee identifies the particular social group to which he claims to belong as "wealthy immigrants returning to the country of Jamaica."  He claims that because of his membership in that group, he will be targeted and at risk of assault and murder should he return to Jamaica.  The BIA dismissed this argument for several independent reasons.  First, it maintained that Lee's proposed social group was waived, because he had argued to the immigration judge only that his group was "returning resident[s] with an upper

middleclass social status." See Matter of W-Y-C- & H-O-B-, 27 I&N Dec. 189, 191 (BIA 2018) (explaining that the BIA generally does not address a new social group not raised in front of the immigration judge). Second, the BIA reasoned that even if Lee had not waived his belatedly identified social group, it would fail for two additional reasons: Returning wealthy individuals do not usually constitute a protected social group, see Agustin, 914 F.3d at 46, and the evidence showed not that Lee would be targeted based on his wealth but instead based on a personal vendetta by Wright.

We need not determine whether Lee waived his proposed social group -- it may be that "upper middleclass" and "wealthy" are functionally equivalent in this context, though we note that Lee has not marshaled any argument to us as to why the categories are the same. Nor need we parse the evidence to determine whether Lee's adversarial relationship with Wright is based in part on his wealth or if it is instead the pure result of a personal dispute. Instead, we affirm based on the BIA's holding that wealthy immigrants returning to their country of origin do not form a cognizable social group except perhaps in unusual situations such as, for example, presented in Stalin-era Russia or Mao's China. See Sicaju-Diaz v. Holder, 663 F.3d 1, 4 (1st Cir. 2011) (explaining that groups who are "viewed as class enemies to be liquidated on account of their immutable heritage" might more obviously qualify as persecuted social groups). Lee makes no claim

to fit into such an exception. Rather, he leaves his claim as indistinguishable from a claim that he will be murdered or robbed because criminals want what he may have (in order to thereby themselves become wealthy Jamaicans). See id. ("In a poorly policed country, rich and poor are all prey to criminals who care about nothing more than taking it for themselves. Indeed, wealth likely provides some extra protection against crime: the poor and near poor in such countries have less but it can more easily be taken from them.").[2] Lee's withholding of removal claim accordingly fails.

## B.

Lee next argues that the immigration judge erred in denying his application for voluntary departure, "a discretionary form of relief." Hakim v. Holder, 611 F.3d 73, 78 (1st Cir. 2010); see 8 U.S.C. § 1229c(a)(1) ("The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense under this subsection [under certain circumstances].").

---

[2] We have given similar explanations in various other decisions over the past several years. See Agustin, 914 F.3d at 46 ("[A] consistent line of our precedent supports the conclusion that wealthy Guatemalans returning to Guatemala do not constitute a protected social group."); Alvizures-Gomes v. Lynch, 830 F.3d 49, 53-54 (1st Cir. 2016); Sam v. Holder, 752 F.3d 97, 100 (1st Cir. 2014); Garcia-Callejas v. Holder, 666 F.3d 828, 830 (1st Cir. 2012) (in the case of an El Salvadoran immigrant, explaining that "[w]e have also rejected social groups based solely on perceived wealth, even if signaling an increased vulnerability to crime"); Beltrand-Alas v. Holder, 689 F.3d 90, 94 (1st Cir. 2012).

The immigration judge found that Lee was statutorily eligible for voluntary departure (and the government does not argue to the contrary), but denied his request based on discretionary factors, including the previous Jamaican charges against him and the events leading to his 2018 Connecticut arrest. The BIA affirmed.

We cannot review the "denial of a request for an order of voluntary departure," 8 U.S.C. § 1229c(f), unless the petition involves "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D); Cruz-Orellana v. Sessions, 878 F.3d 1, 4 (1st Cir. 2017). Lee raises no such claim or question but instead only asks us to review the immigration judge's balancing of several of the factors that might have justified an exercise of discretion in this case. To the extent Lee argues that it was legal error for the immigration judge to consider his foreign arrest, Lee develops no argument that the law categorically precludes an immigration court from taking such a fact into account. The bottom line is that we cannot recalibrate the immigration judge's weighing of facts in deciding whether to grant voluntary departure.

### c.

Lee next argues that the immigration judge erred in denying his motion to continue his immigration proceedings in order to await a result on his application for adjustment of status. An immigration judge can order a continuance of immigration proceedings for "good cause shown." 8 C.F.R. § 1003.29. In

determining whether to grant "a motion for continuance to await the resolution of a collateral matter," the immigration judge must consider: "(1) the likelihood that the alien will receive the collateral relief, and (2) whether the relief will materially affect the outcome of the removal proceedings." Matter of L-A-B-R-, 27 I&N Dec. 405, 413 (A.G. 2018). Additionally, the judge should consider "whether the alien has exercised reasonable diligence in pursuing that relief, DHS's position on the motion, the length of the requested continuance, and the procedural history of the case." Id.

In denying Lee's motion, the immigration judge noted the DHS's opposition. The judge also reasoned that even if Lee's I-130 petition were approved (as it eventually was), his adjustment of status would likely not be successful due to his conduct as reported by the police in Connecticut. The BIA affirmed that decision. We review the denial of the motion to continue for abuse of discretion. Sheikh v. Holder, 696 F.3d 147, 149 (1st Cir. 2012).

We find no abuse of discretion or error of law here. The immigration judge was required to consider the likelihood of Lee's ultimately gaining adjustment of status in deciding whether to continue proceedings. Matter of L-A-B-R-, 27 I&N Dec. at 413. In determining that Lee was unlikely to be granted adjustment of status, the immigration judge primarily considered allegations

- 8 -

that Lee had assaulted his wife and her fourteen-year-old child. According to the Connecticut police report, police were dispatched to Lee's home and arrived to find his eight-months-pregnant wife upstairs with her dress ripped and with scratches and swelling on her arms. Lee's wife allegedly told police that Lee had assaulted her with three children in the room, including a fourteen-year-old, an eleven-year-old, and a one-year-old. The eleven-year-old said that Lee had struck his wife with a shoe, and the fourteen-year-old stated that Lee had assaulted the fourteen-year-old two weeks prior. It was no stretch for the immigration judge to conclude that these allegations, if true, would jeopardize Lee's application for adjustment of status. See Matter of Hashmi, 24 I&N Dec. 785, 793 (BIA 2009) (explaining that "[a] respondent's criminal history" is appropriate for the immigration judge to consider when determining whether "the respondent warrants adjustment of status in the exercise of discretion").

Lee suggests that neither the BIA nor the immigration judge should have relied on allegations contained in a police report in the absence of a conviction. The law is more nuanced: it allows immigration judges deciding motions for discretionary relief to rely on information contained in police reports even absent a conviction as long as the report is determined to be reliable, and its use is not fundamentally unfair. See Arias-Minaya v. Holder, 779 F.3d 49, 54 (1st Cir. 2015). Here, the

- 9 -

immigration judge found the police report "fundamentally reliable" because the report contained "the percipient observations of the police officers including the [wife's] ripped shirt and the injuries observed, and [consisted of] the statements of both [Lee's] wife and the 14-year-old child that [Lee] has physically assaulted them." In finding the report reliable, the immigration judge also observed that Lee did not produce an affidavit or testimony from his wife denying what was in the report (though the immigration judge did also note that Lee's wife had filed the I-130 on his behalf). And that opportunity to rebut a report bearing such indicia of reliability allows us to say in this context that use of the report was not fundamentally unfair. Id. (explaining that use of a report determined to be reliable "was not fundamentally unfair since the petitioner was given an opportunity to challenge its veracity and refute its contents").

Lee also argues that despite the discretionary nature of a decision to adjust an alien's status, he is entitled to the opportunity to seek such an adjustment even if he may not ultimately succeed. That is certainly true in the abstract. See Arevalo v. Ashcroft, 344 F.3d 1, 15 (1st Cir. 2003). But our precedent does not require the immigration tribunals to always give aliens additional time to seek collateral relief. It was well within the immigration judge's discretion to deny Lee's motion

- 10 -

for a continuance and to consider his likelihood of success in gaining an adjustment of status in doing so.

## D.

Finally, Lee contends that the BIA should have remanded his case to the immigration judge based on new facts, namely, the dismissal of his Connecticut charges and the approval of his I-130 petition. Motions to remand to the immigration judge are treated as motions to reopen. Falae v. Gonzáles, 411 F.3d 11, 14 (1st Cir. 2005). "The BIA may only grant a motion to reopen based on new facts if the 'evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing.'" Canaveral Toban v. Ashcroft, 385 F.3d 40, 45 (1st Cir. 2004) (quoting 8 C.F.R. § 1003.2(c)(1)). We will only overturn a denial of a motion to reopen when "the petitioner can establish that the BIA made an error of law or acted in a manner that is fairly characterizable as arbitrary and capricious." Falae, 411 F.3d at 14.

Here, the BIA denied Lee's motion to remand because it reasoned that the dismissal of the Connecticut charges was not a material change in the facts, i.e., it would not make a difference either to Lee's request for voluntary departure or to his application for adjustment of status, as even charges that do not result in a conviction can form the basis for denial of relief, as explained above. In particular, the BIA noted that the bare

dismissal of the charges did not show that the underlying police report was unreliable or otherwise undermine the immigration judge's reliance on it in concluding that it would jeopardize Lee's chance at adjustment. Having reviewed the immigration judge's opinion, we agree. The immigration judge relied on the detailed substance of the report, including the officer's recitation of what he observed, plus the absence of any credible rebuttal, noting especially the absence of any testimony by Lee's wife refuting the police report. While a prosecution -- and certainly a conviction -- would have further buttressed reliance on the report, the dropping of charges in this context did not undercut the immigration judge's reliance on the ineffectively rebutted, partially first-hand report. The BIA therefore did not abuse its discretion by finding no indication that the mere fact that charges were dropped, without more, would have altered that reliance.

As for the approval of Lee's I-130 petition, the immigration judge did assume that the I-130 would be granted and reasoned that adjustment of status would not be merited even if it were. As a result, the approval of the petition cannot have constituted a material change as required to warrant a remand. The BIA thus could not have abused its discretion in denying Lee's motion to remand on that basis.

**III.**

For the reasons explained above, Lee's petition is underlined denied.