# United States Court of Appeals
## For the First Circuit

No. 21-1057

LEONARDO FABIO LÓPEZ-PÉREZ,

Petitioner,

v.

MERRICK B. GARLAND,*
UNITED STATES ATTORNEY GENERAL,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

---

Before

Kayatta, Lipez, and Gelpí, Circuit Judges.

---

Jeffrey B. Rubin, Todd C. Pomerleau, Kimberly A. Williams, and Rubin Pomerleau PC on brief for petitioner.

Brian Boynton, Acting Assistant Attorney General, Civil Division, with whom Jennifer R. Khouri, Acting Senior Litigation Counsel, and Julia J. Tyler, Trial Attorney, Office of Immigration Litigation, Civil Division, on brief for respondent.

---

February 22, 2022

---

* Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Merrick B. Garland has been substituted for former Acting Attorney General Robert Montague Wilkinson as the respondent.

**GELPÍ**, **Circuit Judge**.    Leonardo Fabio López-Pérez ("López-Pérez"), a native and citizen of Guatemala, petitions for review of a ruling of the Board of Immigration Appeals ("BIA") affirming the denial of his application for asylum, withholding of removal, protection under the Convention Against Torture ("CAT"), and voluntary departure.    For the reasons that follow, we affirm.

I. Relevant Factual and Procedural Background

In early 2012, López-Pérez entered the United States through the United States-Mexico border, without inspection, admission, or parole.    At the time, he was sixteen years old.    López-Pérez was initially included in his parents' asylum application filed on November 4, 2013.    However, said application was withdrawn on November 4, 2017.    López-Pérez claims he was unaware of this fact and learned of this withdrawal during his own removal proceedings, well after he had turned twenty-one.

In December 2018, the Department of Homeland Security served López-Pérez with a Notice to Appear, charging him with removability pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") as an "alien present in the United States without being admitted or paroled."    8 U.S.C. § 1182(a)(6)(A)(i).

An Immigration Judge ("IJ") conducted a hearing on September 16, 2019, during which López-Pérez conceded removability and applied for asylum, withholding of removal, protection under the CAT, and post-conclusion voluntary departure.

In a subsequent hearing on November 7, 2019, López-Pérez testified before the IJ in support of his applications for relief. During his testimony, he described his childhood living with his grandmother and sisters in San Marcos, Guatemala. He stated that in addition to Spanish, he spoke the Mam dialect.[1] López-Pérez also asserted that during his childhood he was persecuted for being Mam. While attending school, López-Pérez allegedly was mistreated, subjected to mockery and bullying, and faced verbal attacks by his classmates for his ethnicity and speaking the Mam language. He further stated that he felt threatened in Guatemala given that his cousin, Adan López Gómez, had been kidnapped in 2008. Subsequently, his cousin received letters warning that the kidnappers would go after his family. When asked why the kidnappers targeted his cousin, López-Pérez replied that they perceived him as a wealthy merchant. This testimony was corroborated by two sworn statements from López-Pérez's cousins, Adan López Gómez himself and Cecilio López Gómez. When asked why he felt apprehensive about returning to Guatemala, López-Pérez responded that he feared that what had happened to his cousin would

---

[1] The Mam are an indigenous population in Guatemala, descended from the Mayans. García-García v. Att'y Gen. U.S., 828 F. App'x 106, 107 (3d Cir. 2020).

also occur to him. Additionally, he claimed that he would be discriminated against for his Mam identity.

Following the hearing, the IJ found the petitioner's testimony about his personal and family experiences in Guatemala credible. The IJ, however, concluded that he was ineligible for asylum because he had not filed his application within a reasonable time of turning eighteen, turning twenty-one, or following his parents' withdrawal from the asylum-seeking process. In the alternative, the IJ addressed the merits of the asylum claim and concluded that before he left Guatemala, López-Pérez had not suffered harm that rose to the level of past persecution. Additionally, the IJ found that López-Pérez failed to meet the requisite standard for such relief because he did not show that he would suffer any harm on account of one of the five protected grounds enumerated in the asylum statute. Because his asylum claim failed on the merits, the IJ found that López-Pérez was unable to satisfy the even more stringent burden of establishing a withholding of removal claim. The IJ next denied López-Pérez's CAT petition, concluding that he had not established a likelihood that, if sent back to Guatemala, he would be subject to torture by or with the consent or acquiescence of a public official. Finally, after considering López-Pérez's positive equities and past unlawful activity, the IJ denied the request for voluntary departure.

López-Pérez appealed the IJ's ruling to the BIA, which affirmed the IJ's conclusions. He subsequently filed a timely petition for review with this court.

II. Standard of Review

Where, as here, "the BIA adopts and affirms an IJ's decision, we review the IJ's decision to 'the extent of the adoption, and the BIA's decision as to [any] additional ground.'" Sunoto v. Gonzales, 504 F.3d 56, 59-60 (1st Cir. 2007) (alteration in original) (quoting Berrio-Barrera v. Gonzales, 460 F.3d 163, 167 (1st Cir. 2006)). The agency's findings of fact are reviewed under the substantial evidence standard. "This standard applies both to asylum and withholding claims as well as claims brought under CAT." Settenda v. Ashcroft, 377 F.3d 89, 93 (1st Cir. 2004). Under this analysis, the agency's determinations will be upheld unless the record evidence "compel[s] a reasonable factfinder to make a contrary determination." Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004) (quoting Guzmán v. INS, 327 F.3d 11, 15 (1st Cir. 2003)); see also 8 U.S.C. § 1252(b)(4)(B). Questions of law, in turn, are reviewed de novo. Romilus, 385 F.3d at 5.

III. Discussion

a. Timeliness of the Asylum Application

A noncitizen is eligible for asylum upon establishing that he is a refugee as defined by the INA. Pérez-Rabanales v. Sessions, 881 F.3d 61, 65 (1st Cir. 2018); see also 8 U.S.C. § 1101(a)(42).

- 5 -

"A refugee is a person who cannot or will not return to [his] home country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Olujoke v. Gonzales, 411 F.3d 16, 21 (1st Cir. 2005) (quoting 8 U.S.C. § 1101(a)(42)).

An asylum application must be filed "within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). Failure to comply with said deadline may be excused if the "applicant demonstrates 'changed circumstances which materially affect [his] eligibility for asylum or extraordinary circumstances relating to the delay in filing'" and if the non-citizen "file[s] the application 'within a reasonable period' given those circumstances." Oroh v. Holder, 561 F.3d 62, 66 (1st Cir. 2009) (first quoting 8 U.S.C. § 1158(a)(2)(D); then quoting 8 C.F.R. §§ 1208.4(a)(4), (5)). A noncitizen can establish a changed circumstance that preserves his eligibility for asylum by proving that he was previously included as a dependent in another noncitizen's asylum application and the parent-child relationship to the principal applicant was lost by the attainment of age twenty-one. 8 C.F.R. § 1208.4(a)(4)(i)(C). The noncitizen bears the burden of establishing that he qualifies for such an exception. Id. § 1208.4(a)(2)(i).

It is undisputed that López-Pérez resided in the United States for more than seven years prior to filing his own asylum application. Indeed, by the time he filed his application, he was twenty-three. Consequently, both the IJ and the BIA determined that López-Pérez's application was untimely because it fell well outside of the one-year period after he turned twenty-one. For this reason, the IJ and the BIA concluded that López-Pérez had not demonstrated changed or extraordinary circumstances that justified the long delay in filing his asylum application.

Congress has limited "the scope of judicial review with respect to timeliness determinations in asylum cases." Pan v. Gonzales, 489 F.3d 80, 84 (1st Cir. 2007). As such, this court is barred from reviewing the agency's determination unless the noncitizen identifies a legal or constitutional question. Rashad v. Mukasey, 554 F.3d 1, 5 (1st Cir. 2009); see also 8 U.S.C. § 1158(a)(3). Therefore, before we can reach the substance of López-Pérez's timeliness argument, he must identify a "legal or constitutional defect" in the agency's decision which would allow us to review the agency's determination regarding the application's timeliness. Rashad, 554 F.3d at 5.

López-Pérez contends that the IJ failed to consider that he did not know about his parents' withdrawal from the asylum-seeking process until his own removal proceedings had begun. Although López-Pérez claims that the agency committed factual and legal

- 7 -

error, his challenge nonetheless "takes issue with the evidentiary basis for the BIA's finding that 'circumstances' did not excuse his untimely application for asylum." Rodríguez-Palacios v. Barr, 927 F.3d 13, 17 (1st Cir. 2019). This is the sort of "factual claim masqueraded as a legal challenge" which we lack jurisdiction to review. Rashad, 555 F.3d at 5.

b. Withholding of Removal

Even if certain applicants are not eligible for asylum, they may still be entitled to withholding of removal. Sosa-Pérez v. Sessions, 884 F.3d 74, 77 (1st Cir. 2018). To qualify for withholding of removal, López-Pérez must show that there is a clear probability that his life or freedom would be threatened in Guatemala because of his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).

The burden of proof in a withholding of removal claim is higher than that of an asylum claim. Soeung v. Holder, 677 F.3d 484, 487 (1st Cir. 2012); see also Sosa-Pérez, 884 F.3d at 77. As such, a noncitizen who cannot meet the lower asylum standard will necessarily fail to make out a counterpart claim under the higher standard for withholding of removal. See Soeung, 677 F.3d at 487. Here, the IJ found, and the BIA affirmed, that López-Pérez did not qualify for withholding of removal because he did not meet the lower threshold for asylum.

We will uphold the agency's determination in the face of a substantial evidence challenge "unless the evidence points unerringly in the opposite direction." Rashad, 554 F.3d at 6 (quoting Khan v. Mukasey, 549 F.3d 573, 576 (1st Cir. 2008)). In the present case, the evidence does not compel us to reject the agency's conclusion. First, the record fails to compel a finding that López-Pérez was subject to any treatment that amounts to past persecution. Although the addition of physical violence is not required for such a finding, see Javed v. Holder, 715 F.3d 391, 396 (1st Cir. 2013), past persecution requires that "the totality of a petitioner's experiences add up to more than mere discomfiture, unpleasantness, harassment, or unfair treatment." Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005).

The alleged past persecution based on his cousin's kidnapping incident in Guatemala in 2008 and his membership in the same familial group does not compel a finding of past persecution. López-Pérez did not testify to having received direct threats. Additionally, as the agency noted, López-Pérez indicated that neither he nor his family had been subjected to further violence by Adan's kidnappers in the years between the kidnapping and the time López-Pérez left Guatemala. Nor does the past mistreatment suffered by López-Pérez on the basis of his Mam identity compel a finding of past persecution. Although we acknowledge López-Pérez's claims that he experienced racial slurs in public and

bullying in school, we do not think these lamentable experiences compel a finding that López-Pérez endured "more than mere discomfiture, unpleasantness, harassment, or unfair treatment." Nikijuluw, 427 F.3d at 120.[2] Moreover, López-Pérez now argues, for the first time, that his age at the time of the discriminatory acts is a factor that should be considered when analyzing the past persecution. This argument was not raised before the BIA and, as such, we are now precluded from entertaining it. Sanabria Morales v. Barr, 967 F.3d 15, 19 (1st Cir. 2020).

López-Pérez also claims fear of future persecution for being cousin to Adan López Gómez, who was kidnapped when, according to his sworn statement, he was believed to be a wealthy merchant. We note that López-Pérez's sister and cousin Adan still reside in Guatemala and have not suffered further violence by Adan's kidnappers. Cf. Aguilar-Solis v. INS, 168 F.3d 565, 573 (1st Cir. 1999) ("[T]he fact that close relatives continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits his return."). Additionally, the record does not compel the conclusion that it would be unreasonable to expect López-Pérez to relocate internally in Guatemala to avoid future persecution. 8 C.F.R. § 1208.13(b)(2)(ii).

_____

[2] Although López-Pérez claims on appeal to have experienced "beatings in school," he testified before the IJ that other students "never beat" him.

Furthermore, in his asylum application, López-Pérez noted that he feared being targeted upon his return to Guatemala because he lived in the United States and "the perception is [that] I have money." Being perceived as wealthy, however, is not an available ground for claiming protection. Hernández-Lima v. Lynch, 836 F.3d 109, 116 (1st Cir. 2016).

Finally, López-Pérez avers that if sent back to his country he will be forced to join the Mam militia and fight for lands nearby the Mam settlement. He posits that Guatemalan police officers will not provide security for him as they do not intervene in issues related to indigenous communities. The BIA rejected this theory, noting that López-Pérez "was not persecuted in the past on this basis, and his vague testimony that he may be recruited by other members of his indigenous community to participate in defending their land does not establish the basis for an asylum claim."[3] The record does not compel a conclusion that López-Pérez will experience future persecution by the Mam people upon his return. Rather, it indicates that his family has already left the Mam village and none of his relatives have been involved in tribal land conflicts. Additionally, there is no evidence that López-Pérez will go back to reside in the Mam

---

[3] As to López-Pérez's complaint that the BIA's analysis was "short" and bereft of "any specific fact-finding," it is difficult to see what more the BIA might have said on the basis of the petitioner's "vague testimony."

village. Thus, substantial evidence supports the agency's findings. Because the record does not compel the conclusion that López-Pérez would have been entitled to asylum on the merits, it necessarily fails to compel the conclusion that he satisfies the more onerous "clear probability" standard of his withholding of removal claim. The record does not compel a finding that López-Pérez has shown a "clear probability" that his life or freedom would be threatened based on his relation to Adan López Gómez or his Mam identity if returned to Guatemala.

c. Protection under the Convention Against Torture

To succeed on a CAT claim, the petitioner must show that "it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). This requires the noncitizen to offer specific evidence showing that he will be subject to

> (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions.

Samayoa Cabrera v. Barr, 939 F.3d 379, 382 (1st Cir. 2019) (quoting Settenda v. Ashcroft, 377 F.3d 89, 94 (1st Cir. 2004)); see also 8 C.F.R § 1208.18(a).

López-Pérez contends that he would be subject to torture upon his return to Guatemala by being forced to fight in a land war

against his will, and because the police will not protect him. The IJ pointed out that López-Pérez's fears relate to "crime and actions by private actors" instead of the government of Guatemala. Additionally, the IJ concluded that the record is insufficient to justify his fears of torture and thus did not meet the high burden needed for CAT relief. The BIA affirmed, stating: "We discern no clear error in the [IJ's] predictive fact finding regarding what is likely to occur to the respondent, who has not been tortured in the past, following his return to Guatemala and agree that the predicted outcome does not satisfy the legal definition of torture."

We again review under the substantial evidence standard, upholding the BIA's decision "if supported by reasonable, substantial, and probative evidence on the record considered as a whole." Settenda, 377 F.3d at 93 (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). The record here contains such evidence supporting the agency's conclusion that López-Pérez did not prove that it was more likely than not that he would be tortured by or with the acquiescence of the government if he returned to Guatemala. When asked about the conditions in the Mam village and the indigenous land war, López-Pérez stated that he has no contact with people who live in the Mam village and that he understands that the village's problems persist from what some recent arrivals from the area told him and from what he has seen on the internet.

Additionally, as previously discussed, there is no evidence that López-Pérez will go back to reside in the Mam village. Furthermore, his sister moved from the village to an area not disturbed with land wars. Although López-Pérez points to country condition evidence, the evidence of record as a whole is insufficient to compel a reasonable factfinder to conclude that it is more likely than not that López-Pérez would be tortured by or with the acquiescence of a government official if he were to return to Guatemala.

### d. Voluntary Departure

Voluntary departure is a discretionary form of relief through which the United States permits a noncitizen to voluntarily depart from the country. See DaCosta v. Gonzales, 449 F.3d 45, 51 (1st Cir. 2006). "Voluntary departure benefits the government by expediting repatriation and eliminating the costs associated with deportation. At the same time, it benefits the alien by allowing him to choose his destination and avoid some of the penalties attendant to removal." Naeem v. Gonzales, 469 F.3d 33, 36-37 (1st Cir. 2006). Our jurisdiction to review voluntary departure denials "is narrowly circumscribed." Cruz-Orellana v. Sessions, 878 F.3d 1, 4 (1st Cir. 2017). "[A] noncitizen may not bring a factual challenge to orders denying discretionary relief, including cancellation of removal, voluntary departure, adjustment of status, certain inadmissibility waivers, and other determinations

- 14 -

'made discretionary by statute.'" Nasrallah v. Barr, 140 S. Ct. 1683, 1693-94 (2020) (quoting Kucana v. Holder, 558 U.S. 233, 248 (2010)). However, this court may review "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D).

The IJ denied López-Pérez voluntary departure, exercising discretionary authority upon analyzing the evidence presented and concluding he was ineligible for relief. López-Pérez posits that the IJ erred by "fail[ing] to properly assess all of the provided testimony and evidence when reaching her determination." However, López-Pérez simply does not raise a constitutional challenge or legal question. See Cruz-Orellana, 878 F.3d at 4. Instead, he argues that the IJ gave undue weight to his past conviction for driving under the influence of alcohol, his dismissed charge relating to an assault in 2017, and a recent charge for assault and battery against his child's mother and her male friend. Nevertheless, López-Pérez "develop[ed] no argument that the law categorically precludes an immigration court from taking such [facts] into account." Lee v. Barr, 975 F.3d 69, 74 (1st Cir. 2020). The BIA affirmed the IJ's rationale that the equities in petitioner's favor did not outweigh the adverse factors as to warrant voluntary departure. This is precisely the kind of discretionary decision that we lack jurisdiction to review. Id.

For the foregoing reasons, the BIA's ruling is

**Affirmed**.

- 15 -