# United States Court of Appeals
## For the First Circuit

No. 20-1587

IGOR PEULIC,

Petitioner,

v.

MERRICK B. GARLAND,[*]
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron and Selya, Circuit Judges,
and Delgado-Hernández,[**][†]District Judge.

Stephanie E.Y. Marzouk for petitioner.
Jennifer A. Singer, Trial Attorney, Office of Immigration
Litigation, Civil Division, U.S. Department of Justice, with whom
John V. Coghland, Deputy Assistant Attorney General and Shelley R.
Goad, Assistant Director, Office of Immigration Litigation, were
on brief, for respondent.

---

[*]     Pursuant to Fed. R. App. P. 43(c)(2), Attorney General
Merrick B. Garland has been substituted for former Attorney General
William P. Barr as the respondent.

[**] Of the District of Puerto Rico, sitting by designation.

January 11, 2022

**DELGADO-HERNÁNDEZ, District Judge.** Igor Peulic petitions for review of a final order of the Board of Immigration Appeals ("BIA"), which affirmed an immigration judge's decision finding him removable and denying his application for adjustment of immigration status, waiver of inadmissibility, asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), and ordered him removed from the United States. After careful consideration, we deny the petition in part and dismiss it in part for want of jurisdiction.

**I.**

## A. Background

Mr. Peulic is a 38-year-old native and citizen of Bosnia-Herzegovina. In July 1992, he was admitted to the United States as a refugee. In April 2016, he was convicted by a jury in Massachusetts of: (1) assault with a dangerous weapon ("ADW"), a firearm, see Mass. Gen. Laws ch. 265, § 15B(b), for which he was sentenced to a term of imprisonment of four to five years; (2) carrying a firearm, a .357 revolver, without a license, see Mass. Gen. Laws ch. 269, § 10(a), for which he was sentenced to a concurrent term of imprisonment of four to five years; (3) carrying a loaded firearm without a license, see id. § 10(n), for which he was sentenced to a consecutive but suspended term of imprisonment of two and a half years; and (4) discharging a firearm within 500

feet of a dwelling, see id. § 12E, for which he was sentenced to a concurrent term of imprisonment of three months.

The convictions stemmed from an incident that occurred in the early morning hours of February 1, 2015, when a police officer on patrol in the Bellingham Square section of Chelsea, Massachusetts -- a typically busy area -- heard three gunshots and observed a muzzle flash coming from a crosswalk. As the officer approached, he observed a man, later identified as Mr. Peulic, with a firearm in his hand.[1] Mr. Peulic ignored the officer's order to stop and fled on foot. He encountered a second officer, who ordered Mr. Peulic to drop the gun several times. Mr. Peulic ignored the officer's commands, advanced toward the officer, and pointed the gun in the direction of the officer. Believing he was in immediate danger, the officer fired his service weapon three times, striking Mr. Peulic once. After being shot, Mr. Peulic dropped the gun but tried to reach it until being ordered by police not to touch the gun. Mr. Peulic appealed his conviction for ADW. In April 2018, the Massachusetts Appeals Court affirmed the conviction. See Commonwealth v. Peulic, 103 N.E.3d 771 (Mass. App. Ct. 2018) (unpublished table decision). In June 2018, the Massachusetts Supreme Judicial Court denied further appellate

_____

[1] The firearm was unregistered and identified as a loaded .357 long-barrel Magnum.

-4-

review.  See Commonwealth v. Peulic, 113 N.E.3d 838 (Mass. 2018) (unpublished table decision).

## B. Removal Proceedings

On October 9, 2018, the Department of Homeland Security served Mr. Peulic with a Notice to Appear, charging him with removability under Section 237(a)(2)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony in connection with ADW, and Section 237(a)(2)(C) of the INA, 8 U.S.C. § 1227(a)(2)(C), for the firearm offense.[2]  On April 25, 2019, Mr. Peulic appeared with counsel for a preliminary hearing before an Immigration Judge ("IJ"), conceding the firearms charge of removability while denying the aggravated felony charge of removability.  After reviewing the conviction documents, the IJ sustained both charges of removability.

On June 4, 2019, Mr. Peulic submitted applications for adjustment of status and a concurrent waiver of inadmissibility to the IJ.  In addition, he sought asylum, withholding of removal, and CAT protection.  On June 26, 2019, he appeared for a merits hearing, and testified in support of his applications for relief,

---

[2] The INA defines "aggravated felony" as including a crime of violence (as defined in 18 U.S.C. § 16 but not including a purely political offense), for which the term of imprisonment is at least one year.  See 8 U.S.C. § 1101(a)(43)(F).

as did two of his three siblings, Bojan Peulic and Tatjana Peulic. The testimony reflects that their mother has schizophrenia, breast cancer, and diabetes. Prior to his February 2015 arrest, Mr. Peulic was the mother's primary caregiver because his siblings and father worked fulltime, whereas Mr. Peulic did not. Since that date, Mr. Peulic's sister, who lives with her parents and two other brothers, took over responsibility for their mother's care, albeit the father helps when he can. She expressed that taking care of her mother is "very hard," particularly because she also has a young child. Tatjana said that she expects Mr. Peulic to resume caretaking duties once he is released from custody, though the record reflects that as a condition of his probation, Mr. Peulic is required to maintain full-time employment or school. The family has discussed placing the mother in a nursing home, but they worry that she would not be treated well there.

Mr. Peulic has family ties in Bosnia-Herzegovina, and his father traveled there as recently as 2018 without incident, despite his military service during that country's war, and being Orthodox Christian in a predominantly Muslim part of Bosnia-Herzegovina. Mr. Peulic's siblings declared that if he had to return to Bosnia-Herzegovina, circumstances would be "much harder for them" and that his family "need[ed] [him] here." As for his crimes, Mr. Peulic stated he did not recall what happened because

he was "black[ed] out" from consuming too much alcohol. Even though the incident was characterized as isolated, he admitted to a history of struggles with alcohol. He remarked that he realized he "[made] a big mistake," and attended AA meetings and a violence prevention class while in state custody.

On July 25, 2019, Mr. Peulic sought to adjust his status from refugee to that of a lawful permanent resident under 8 U.S.C. § 1159(a) with the United States Citizenship and Immigration Services ("USCIS") and applied for a concurrent waiver of inadmissibility under 8 U.S.C. § 1159(c). On September 12, 2019, the USCIS denied Mr. Peulic's applications for adjustment of status and waiver. It concluded that, because Mr. Peulic's crime was "violent or dangerous," pursuant to Matter of Jean, 23 I. & N. Dec. 373 (A.G. 2002), he was required to show "exceptional and extremely unusual hardship" to overcome his criminal history, and neither his mother's illness nor the difficulties he would face in Bosnia-Herzegovina met this standard.

## C. **IJ's and BIA's Decisions**

On October 17, 2019, the IJ issued a written decision, finding that Mr. Peulic's conviction for ADW was a "crime involving moral turpitude" that rendered him inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I), and thus ineligible for adjustment of

status under 8 U.S.C. § 1159(a).[3] Considering Mr. Peulic's application for a waiver of inadmissibility, the IJ determined that Mr. Peulic's crime was "violent and dangerous." As a result, the Matter of Jean heightened standard applied to his request for a waiver. Applying this standard, the IJ concluded that Mr. Peulic failed to establish that his removal would cause "exceptional and extremely unusual hardship" to himself or his family. Alternatively, the IJ determined that, even if Mr. Peulic had established the requisite hardship, he did not merit a waiver as a matter of discretion. She explained that Mr. Peulic engaged in an extremely serious and dangerous incident that had the potential to cause the death of a police officer in the line of duty and put others in the area in great danger as well. Furthermore, she found Mr. Peulic ineligible for asylum and withholding of removal, and denied the application for CAT protection, concluding that Mr. Peulic had not shown he would more likely than not suffer torture upon return to Bosnia-Herzegovina. Thus, she ordered him removed from the United States to Bosnia-Herzegovina.

---

[3] The IJ found that the conviction for assault with a dangerous weapon is categorically a crime involving moral turpitude. Mr. Peulic does not dispute that ADW is such a crime under Massachusetts law.

The BIA affirmed the IJ's decision to deny Mr. Peulic's application to adjust his status in conjunction with a waiver of inadmissibility.

## II.

### A. Jurisdiction

Because Mr. Peulic claims that the agency relied on a wrong legal standard -- the heightened standard set in Matter of Jean -- and wrongfully applied the standard here, he raises questions of law over which we have jurisdiction. See Ayeni v. Holder, 617 F.3d 67, 71 (1st Cir. 2010) (court has jurisdiction to hear and determine petitioner's claim that the BIA applied an incorrect legal standard); Mustafic v. U.S. Att'y Gen., 591 F. App'x 726, 729 (11th Cir. 2014) (application of heightened standard to deny petitioner's application for a waiver of inadmissibility raises question of law over which court has jurisdiction).

### B. Waiver of Inadmissibility Standard

Mr. Peulic alleges that, in Matter of Jean, the Attorney General exceeded the scope of his discretionary authority by adopting a heightened waiver standard. An alien who is found to have committed "a crime of moral turpitude" generally may be deemed inadmissible. See 8 U.S.C. § 1182(a)(2)(A)(i)(I). If a refugee alien is inadmissible, he may request a waiver of inadmissibility. See 8 U.S.C. § 1159(c). The Attorney General may, in his

-9-

discretion, waive certain grounds of inadmissibility for "humanitarian purposes, to assure family unity, or when it is otherwise in the public interest." See 8 U.S.C. § 1159(c). Applying this precept, in Matter of Jean, the Attorney General overturned the BIA, which had granted an inadmissibility waiver to a refugee convicted of second-degree manslaughter for beating and shaking a baby to death. 23 I. & N. Dec. at 374-75. Doing so, the Attorney General articulated a heightened standard for waiving the inadmissibility of refugees who have been convicted of violent or dangerous crimes.

To this end, the Attorney General expressed that, "[i]t would not be a prudent exercise of the discretion afforded . . . by [8 U.S.C. § 1159(c)] to grant favorable" relief to such aliens "except in extraordinary circumstances, such as those involving national security or foreign policy considerations, or cases in which an alien clearly demonstrates that the denial of status adjustment would result in exceptional and extremely unusual hardship." Id. at 383. Thus, the Attorney General directed the agency to consider the "nature of the criminal offense that rendered an alien inadmissible in the first place" and balance the "claims of hardship to the [alien's] family against the gravity of [the] criminal offense." Id.

The Attorney General acted within statutory boundaries in adopting this framework. Congress plainly intended for the Attorney General to have broad discretion when deciding to grant or deny a request for an inadmissibility waiver under 8 U.S.C. § 1159(c). See INS v. Yang, 519 U.S. 26, 30 (1996) (describing the Attorney General's power to grant a discretionary waiver of deportation as "'an act of grace' which is accorded pursuant to [the Attorney General's] 'unfettered discretion'" and likening it to "'a judge's power to suspend the execution of a sentence, or the President's to pardon a convict'" (citations omitted)). That discretion carries the power to establish reasonable standards for how that discretion should be exercised. See Torres-Valdivias v. Lynch, 786 F.3d 1147, 1152 (9th Cir. 2015) (pointing out that the Attorney General has discretion to grant or deny adjustments of status and may establish standards for the exercise of that discretion).[4]

As for the Attorney General's exercise of that discretion to adopt a heightened standard in Matter of Jean, it fell within permissible bounds, as other sister circuits have held.

---

[4] See also Ayala-Chavez v. INS, 944 F.2d 638, 641 (9th Cir. 1991) (The Attorney General has discretion to grant or deny waivers of deportation, and inherent in this discretion is his authority to establish general standards to govern the exercise of such discretion).

-11-

See <u>Ali</u> v. <u>Achim</u>, 468 F.3d 462, 467 (7th Cir. 2006) (holding that the Attorney General did not exceed statutory authority in adopting heightened standard set in <u>Matter of Jean</u>); <u>Jean</u>, 452 F.3d at 397-98 (holding that the Attorney General did not exceed the discretionary authority afforded to him by Congress when deciding <u>Matter of Jean</u>); <u>Togbah</u>v. <u>Ashcroft</u>, 104 F. App'x 788, 794 (3d Cir. 2004) (holding that the Attorney General's decision in <u>Matter of Jean</u> "is a permissible exercise of his statutory discretion in enhancing the waiver standards for . . . those convicted of 'dangerous and violent' crimes"). At the end of the day, it is both rational and facially legitimate, not arbitrary or capricious, for the Attorney General to require a heightened showing of equities by an alien who has committed a violent or dangerous offense in light of the "national immigration policy of not admitting aliens who [c]ould be a danger to society." <u>Rivas-Gomez</u> v. <u>González</u>, 225 F. App'x 680, 683 (9th Cir. 2007).

Mr. Peulic argues that <u>Matter of Jean</u> is not a reasonable interpretation of the INA because 8 U.S.C. § 1159(c) allows the Attorney General to waive inadmissibility for humanitarian reasons, to assure family unity, or when it is otherwise in the public interest, but does not require a showing of hardship for refugee adjustment even though Congress has explicitly delineated in the INA the level of hardship required for other forms of

-12-

discretionary relief.  That Congress did not provide a standard for the exercise of discretion under 8 U.S.C. § 1159(c) does not mean that by adopting a heightened standard the Attorney General failed to take up a permissible construction of the statute.  See Mejia v. Gonzales, 499 F.3d 991, 994-97 (9th Cir. 2007).

The court in Mejia examined a waiver of admissibility setup under 8 U.S.C. § 1182(h)(1)(B), a provision similar to 8 U.S.C. § 1159(c), pursuant to which the Attorney General has discretion to waive the inadmissibility of certain criminal aliens if the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien.  See id. at 995 (describing statutory and regulatory background).[5]  The Attorney General expressed that he would not favorably exercise discretion in cases involving violent or dangerous crimes except in extraordinary circumstances, such as in cases where the alien clearly demonstrates that denial of relief would result in exceptional and extremely unusual hardship.  Id.

---

[5]  The Attorney General promulgated a regulation, 8 C.F.R. § 212.7(d), to establish the heightened standard dealt with in Mejia.

-13-

The court found that the INA had not addressed what standard should be used to exercise discretion under 8 U.S.C. § 1182(h)(1)(B) after statutory requirements are met, and held that under those circumstances, the exceptional and extremely unusual hardship standard that the Attorney General adopted supplemented and gave definition to the standard to be applied to individuals who have committed violent or dangerous crimes. Id. at 996. As important, the court recognized that given Congress's broad grant of discretion, the Attorney General's decision was a permissible construction of the statue. Id. So too here. The Attorney General's rationale may not persuade all readers, but the construction he opted for in Matter of Jean "[need not be] the only one [he] permissibly could have adopted." Id. (first alteration in original) (quoting Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 843 n.11 (1984)). There is nothing infirm with that construction.

Mr. Peulic asserts that Congress intended to react to international humanitarian needs in a flexible and thoughtful way, and Matter of Jean restricts refugee status adjustment in a manner that Congress never intended. The Attorney General did not, however, add a class of aliens to those who are statutorily ineligible for waiver or instruct the agency to ignore statutory considerations of family unity, humanitarian concerns, and public

-14-

interest.  See Jean, 452 F.3d at 397.  To the contrary, he left open the possibility that even the most violent and dangerous immigrants could be granted relief in an appropriate case.  Id. This is not the situation we encountered in Succar v. Ashcroft, 394 F.3d 8, 28 (1st Cir. 2015), where we struck down a regulation that categorically eliminated eligibility for a type of relief for certain aliens despite the fact that the statute did not give the Attorney General discretion to decide who could apply for adjustment.

Mr. Peulic contends that Matter of Jean's heightened standard is unreasonable because it places no bounds on the term "violent or dangerous," which, to his way of thinking, becomes so broad as to be meaningless in violation of the Fifth Amendment's right to due process of law.  The void-for-vagueness doctrine ensures that individuals have fair notice of the consequences of their conduct, including certain immigration consequences, and can comport themselves accordingly.  See Jordan v. De George, 341 U.S. 223, 230-32 (1951).  Assuming without deciding that the void-for-vagueness doctrine under the Fifth Amendment can apply in the context of discretionary adjustment of status relief under § 1159(c), we conclude that the term "violent or dangerous crime" is not unconstitutionally vague.

The phrase "violent or dangerous" is not unconstitutionally vague because under Matter of Jean the relevant inquiry is based on real-world facts, not some idealized crime, and in this sense, does not face the problem that the Supreme Court identified in Sessions v. Dimaya, 138 S. Ct. 1204, 1215-16 (2018), where it found that 18 U.S.C. § 16(b), which defines a "crime of violence," is unconstitutionally vague. Section 16(b) defines a "crime of violence" to include "a felony . . . that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). The Supreme Court held that two features of this definition combine to create "'hopeless indeterminacy,' inconsistent with due process." Dimaya, 138 S. Ct. at 1213 (quoting Johnson v. United States, 576 U.S. 591, 598 (2015)).

First, the Supreme Court explained that the definition "calls for a court to identify a crime's 'ordinary case' in order to measure the crime's risk." Id. at 1215. This "ordinary case" is "an excessively 'speculative,' essentially inscrutable thing." Id. (quoting Johnson, 576 U.S. at 597). Second, the Supreme Court noted that the "substantial risk" standard is uncertain. Id. But the uncertainty alone does not make the definition vague. Rather, "[t]he difficulty comes . . . from applying such a standard to

-16-

. . . 'an idealized ordinary case of the crime.'" Id. at 1216 (quoting Johnson, 576 U.S. at 597). Otherwise, the definition may be applied to "real-world conduct." Id. at 1215. As the Supreme Court observed, "'we do not doubt' the constitutionality of applying § 16(b)'s 'substantial risk [standard] to real-world conduct.'" Id. (alteration in original) (quoting Johnson, 576 U.S. at 603-04).

Matter of Jean clears this hurdle, for it uses the term "violent or dangerous" in line with the facts of each case. See Miramontes v. Barr, 830 F. App'x 840, 841 (9th Cir. 2020) (concluding that term "violent or dangerous" is not unconstitutionally vague because it requires a determination of whether a particular crime is "violent or dangerous" based on the facts of the case). By the same token, applying it to the facts leading to Mr. Peulic's conviction poses no vagueness problem. See, e.g., Torres-Valdivias, 786 F.3d at 1150 (applying the term to sexual battery on the alien's step-sister); Ali, 468 F.3d at 464-65 (applying it to substantial battery where the alien used a box-cutter to cut another man about the face and body, threatening to kill him); Matter of Jean, 23 I. & N. Dec. at 374-75 (applying it to manslaughter, where the alien beat and shook a baby to death).

-17-

Mr. Peulic maintains that if <u>Matter of Jean</u>'s heightened standard were permissible, in order to ensure uniformity and structure, a categorical approach should apply for determining whether a crime is "violent or dangerous." He faults the IJ for only considering the facts and not an "articulable legal standard," an approach that, in his view, leads to analytical problems. We see it differently.

Requiring the use of the categorical approach is at odds with <u>Matter of Jean</u>, where the Attorney General appeared to take a facts-and-circumstances-based approach, describing the crime in some detail. <u>See</u> 23 I. & N. Dec. at 375, 383 (looking at the facts underlying the alien's conviction, including those outside the record of conviction).

## C. **Application of Standard**

Mr. Peulic posits that in any event, the BIA erred when it applied <u>Matter of Jean</u> to his case. He argues that the IJ failed to consider the hardship factors in the aggregate; overlooked "voluminous evidence of hardship"; mischaracterized the hardship evidence; and, rather than conducting a de novo inquiry, "rubber-stamped" the USCIS's denial of his waiver request. The Government counters that this is an impermissible challenge to the manner in which the BIA exercised its discretion, which falls outside the jurisdiction of the courts of appeals.

-18-

In general, federal courts lack jurisdiction to review the "agency's discretionary decisionmaking in an immigration case." Arias-Minaya v. Holder, 779 F.3d 49, 52 (1st Cir. 2015). By exception, the court may review those decisions and orders to the extent that "the assigned errors raise colorable constitutional claims or questions of law," Arias-Minaya, 779 F.3d at 52, but may not re-weigh evidence of hardship, see Perez-Trujillo v. Garland, 3 F.4th 10, 24 (1st Cir. 2021) ("[T]he government is right that we have no jurisdiction to re-weigh the evidence of hardship.").

On this foundation, we review the agency's "legal conclusions de novo and the underlying factual findings under the deferential substantial evidence standard." Pojoy-De León v. Barr, 984 F.3d 11, 16 (1st Cir. 2020). In line with the standard, we ask whether the decision "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Thapaliya v. Holder, 750 F.3d 56, 59 (1st Cir. 2014) (quoting Sunarto Ang v. Holder, 723 F.3d 6, 10 (1st Cir. 2013)). That the record supports a conclusion contrary to that reached by the agency "is not enough to warrant" upsetting its view of the matter. Lopez de Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007). For that to occur, the record must compel the contrary conclusion. Id. When the BIA affirms the IJ's opinion and

examines some of the bases of that decision, "we review both the IJ's and the BIA's opinions." Matovu v. Holder, 577 F.3d 383, 386 (1st Cir. 2009). With this backdrop in place, we turn to those decisions.

Both the IJ and the BIA examined the record and there is no indication that either one acted on mistaken views about the correct legal standard applying to their exercise of discretion. They applied the correct standard to the undisputed facts and, based on those facts, concluded that Mr. Peulic did not establish exceptional and extremely unusual hardship justifying a waiver of inadmissibility.

On that account, the IJ expressed that she "considered the documentary evidence and testimony of [Mr. Peulic] and his witnesses in their entirety, whether or not specifically summarized or referenced" in her written decision. Based on that documentary and testimonial evidence, she made her own factual findings. Although she noted those of the USCIS and ultimately agreed with them, a fair reading of her decision reflects that she conducted a de novo inquiry into Mr. Peulic's hardship claims. Moreover, she went a step further, assumed that Mr. Peulic had demonstrated the requisite hardship and/or humanitarian concerns, yet in her discretion, denied the inadmissibility waiver.

To that end, the IJ observed that Mr. Peulic committed an extremely serious crime that had the potential to cause the death of a police officer in the line of duty and put others in the area in great danger. Mr. Peulic pointed a firearm at a police officer and began to move forward in a threatening manner. The officer, fearing imminent harm, shot Mr. Peulic. Even after being shot and lying on the ground, Mr. Peulic tried to reach for the firearm. He had already shot several rounds of ammunition in the air by the time police arrived.

The IJ indicated that Mr. Peulic could not recall the event due to his own intoxication, albeit he conceded that he was familiar with the allegations against him. The IJ alluded to the fact that Mr. Peulic's blackout was not isolated but indicative of an ongoing problem, for he acknowledged having had at least one prior blackout, and even though he may not present violent tendencies when sober, these tendencies may emerge when he consumes alcohol, particularly to the point when he blacks out and cannot recall what events have transpired. And in the absence of any evidence demonstrating genuine rehabilitation beyond participation in a handful of AA meetings and a violence prevention program while incarcerated, the IJ concluded that Mr. Peulic's potential for

danger outweighed any hardship or humanitarian factors that he put forth in the case.[6]

In turn, the BIA reviewed the IJ's factual findings under a clearly erroneous standard, and questions of law, discretion, and judgment de novo, finding no error in the IJ's determinations. The BIA considered all of the evidence before it, acknowledging the illness and mental problems of Mr. Peulic's mother; the role that Mr. Peulic had played as her primary caretaker; the caretaking role that Mr. Peulic's sister assumed during his incarceration and the negative implications it had on her life, as well as the fact that Mr. Peulic's conditions of probation would restrict him from assisting his mother in the same capacity as he had prior to his incarceration.

The BIA recognized as a very significant factor Mr. Peulic's separation from his family, and expressed sympathy to the unfortunate consequences that such a separation would entail, but agreed with the IJ that Mr. Peulic did not show that he or his family would suffer exceptional and unusual hardship if he were removed from the United States. And as for where the removal would lead, that is, Bosnia-Herzegovina, the BIA reached the same

_____

[6] The IJ expressed that while Mr. Peulic's application for waiver solely requested a waiver to ensure family unity, she also considered the humanitarian factors at play in the present matter.

conclusion as the IJ, given Mr. Peulic's family ties in Bosnia-Herzegovina, his familiarity with the culture and language of Bosnia-Herzegovina, and his father's recent safe travel to Bosnia-Herzegovina despite the latter's military service during the armed conflict in Bosnia-Herzegovina.

Finally, the BIA agreed with the IJ's alternative ruling that even if Mr. Peulic had demonstrated exceptional and extremely unusual hardship, as a matter of discretion the waiver of inadmissibility should be denied. It remarked that where, as here, a violent or dangerous crime is involved, the seriousness and injury or risk of injury tied to the underlying crime may be so severe that this and any other negative considerations may outweigh even equities constituting extraordinary circumstances. And upon review of the record, the BIA concluded that the IJ properly weighed the favorable factors against the adverse factors to conclude that, in her discretion, the waiver of inadmissibility should not be granted.

Substantial evidence supports the IJ's and BIA's conclusions. The record does not compel or require a contrary determination. This is not a case like Perez-Trujillo, in which we reversed the BIA for having erred as a matter of law in ignoring altogether – in the hardship inquiry – whether the petitioner's country of origin would be particularly dangerous to him, given

-23-

the special risk that he faced of being severely harmed due to his past gang membership (even though the record contained substantial evidence to that effect). 3 F.4th at 22-23.

Mr. Peulic submits that the BIA did not conduct a de novo review of the record because its decision cites only to the IJ's decision and pages of the hearing transcript despite the fact that the record contains hundreds of pages of medical record, affidavits and a social worker's evaluation. Examination of the BIA's decision shows the BIA considered all of the evidence in the record.[7] The BIA did not have to cite every document and page to meaningfully account for its decision. See Larita-Martínez v. INS, 220 F.3d 1092, 1095-96 (9th Cir. 2000) (rejecting argument that because the BIA did not specifically mention particular evidence, it did not consider it, for the BIA stated that it had reviewed the record, and in the absence of evidence to the contrary, this meant the contentions on appeal and the documents submitted in support of the appeal); Man v. INS, 69 F.3d 835, 838 (7th Cir. 1995) (assuming that the BIA reviewed the IJ's specific findings in light of the record and agreed with them, given that

_____

[7] Not only does the decision refer to evidence; it includes language such as "upon review of the record," "the record reflects," "the record shows," and "considering all of the evidence before us."

in issuing its decision, it approvingly referenced the IJ's decision).[8]

Mr. Peulic claims the BIA overlooked testimony from his brother and sister concerning their potential hardships, and from his father regarding Mr. Peulic's aunts in Bosnia-Herzegovina, who are struggling and would not be able to assist him. We have seen that the BIA reviewed the record. For Mr. Peulic, however, a different weighing of the evidence is in order. Yet, as mentioned above, we lack jurisdiction to reweigh evidence. See Arias-Minaya, 779 F.3d at 52.

Mr. Peulic contends that the BIA failed to consider whether "extraordinary circumstances," other than hardship, existed here. He argues that Matter of Jean did not establish an exhaustive list of the extraordinary circumstances that may warrant a waiver of inadmissibility. Therefore, in his view, the IJ and BIA should have analyzed whether "'extraordinary

---

[8] See also Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir. 2002) ("The B[IA] 'is not required to write an exegesis on every contention,' but only to show that it has reviewed the record and grasped the movant's claims." (quoting Mansour v. INS, 230 F.3d 902, 908 (7th Cir. 2000))); Green v. Att'y Gen., 694 F.3d 503, 509 (3d Cir. 2012) ("[A]lthough the IJ's opinion did not specifically discuss every individual piece of evidence, the IJ made clear that she had '[c]onsider[ed] all of the evidence of record.' This is all that is required . . . ."(second and third alterations in original)).

circumstances' other than hardship or national security concerns exist" in this case.[9] We are not persuaded.

The IJ alluded to the hardship factors mentioned earlier as well as to the other elements that Mr. Peulic identifies as "extraordinary circumstances." Specifically, the IJ referred to the traumatic nature of events in Mr. Peulic's childhood in the former Yugoslavia, his flight therefrom, and conditions in Bosnia-Herzegovina, and also to the lack of evidence demonstrating genuine rehabilitation by Mr. Peulic, all of which led her to conclude that Mr. Peulic did not demonstrate extraordinary circumstances such that she could overlook the severity and dangerousness of his criminal activity.

The BIA agreed with the IJ's determination. To repeat, the BIA found that the IJ properly weighed favorable factors against adverse factors to determine that as a matter of discretion, the waiver of inadmissibility should be denied. In cases involving violent or dangerous crimes, the seriousness and

---

[9] The Government asserts that Mr. Peulic did not raise this argument to the BIA, thereby failing to exhaust it, and that for that reason, we lack jurisdiction to consider it in the first instance. There is no jurisdictional bar because the BIA addressed it in finding absence of extraordinary circumstances justifying relief; Mr. Peulic raised the point in his opening brief; and the government had a full opportunity to respond to the claim in its own brief. See Perez-Trujillo, 3 F.4th at 18 n.4 (applying same reasoning to reject government's "failure-to-raise" argument).

injury or risk of injury tied to the underlying crime may be so severe that it, and any other negative considerations, may outweigh even equities constituting extraordinary circumstances. And that was the case with Mr. Peulic's criminal conduct, which in light of the evidence, for the BIA merited a "negative discretionary consideration."

Viewing the record as a whole, we are satisfied that the BIA adequately considered the question of extraordinary circumstances called for in Matter of Jean. This said, the relative weight it accorded to the evidence in the record to deny the waiver of inadmissibility is off limits here, for lack of jurisdiction.

## III.

We need go no further. For the reasons elucidated above, the petition for review is denied in part and dismissed in part.[10]

---

[10] Mr. Peulic does not contest the allegations of removability and makes no arguments in support of his application for asylum or CAT protection. Thus, claims regarding those matters have been waived. See Sok v. Mukasey, 526 F.3d 48, 52 & n.1 (1st Cir. 2008) (deeming asylum and CAT claims waived where petitioner made no argument with respect to those claims).