# United States Court of Appeals
## For the First Circuit

No. 13-2537

CARLOS MANUEL ARIAS-MINAYA,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Souter,[*] <u>Associate Justice</u>,
and Selya, <u>Circuit Judge</u>.

> <u>Jeffrey B. Rubin</u>, <u>Allan M. Tow</u>, and <u>Rubin Pomerleau, P.C.</u> on brief for petitioner.
> <u>Stuart F. Delery</u>, Assistant Attorney General, Civil Division, <u>Eric W. Marsteller</u>, Senior Litigation Counsel, and <u>Juria L. Jones</u>, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

February 27, 2015

---

[*]Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SELYA, Circuit Judge.** Petitioner Carlos Manuel Arias-Minaya seeks judicial review of a final order of the Board of Immigration Appeals (BIA) denying his request for voluntary departure. After careful consideration, we deny the petition in part and dismiss it in part for want of jurisdiction.

## I. BACKGROUND

The relevant facts are easily assembled. The petitioner, a Dominican national, overstayed after entering the United States in 2005 on a six-month visitor's visa. In 2009, the Department of Homeland Security commenced removal proceedings. See 8 U.S.C. § 1227(a)(1)(B). The petitioner conceded removability and cross-applied for adjustment of status, see id. § 1255, or voluntary departure, see id. § 1229c.

While the immigration proceedings were pending, the petitioner was arrested and charged in a Massachusetts state court with one count of assault with a dangerous weapon (a knife) and three counts of threatening to commit murder. See Mass. Gen. Laws ch. 265, § 15B(b); id. ch. 275, § 2. The charges arose from a domestic disturbance. The record indicates that when the officers arrived at the scene, the complaining witness (the mother of the petitioner's two children) told the police that the petitioner had repeatedly threatened to kill both her and her children, first by telephone and then in person. The police arrested the petitioner,

and a state court thereafter granted the complaining witness a restraining order.

One of the police officers prepared a report documenting the events surrounding the petitioner's arrest. This report chronicled statements made by both the complaining witness and the petitioner.[1]

In the immigration court, the petitioner abandoned his claim for adjustment of status. He continued, however, to press his claim for voluntary departure. The police report was introduced into evidence. At the end of the hearing, the immigration judge (IJ) determined that, even though the criminal charges against the petitioner were still pending in state court, there was no reason to find the police report inaccurate or lacking in probative value. In the IJ's view, the police report reliably disclosed a "very disturbing set of facts" and the petitioner presented a "direct an[d] immediate danger to both his children and the mother of his children." The IJ concluded that these negative factors far outweighed any positive factors and, thus, the petitioner did not warrant a favorable exercise of discretion in the form of voluntary departure. An order for removal followed.

The petitioner appealed to the BIA. While the appeal was pending, the criminal charges were dismissed because the

_____

[1] The petitioner reportedly told the police that he "was crazy" and "wanted [the police] to arrest him."

complaining witness failed to appear. The petitioner thereupon asked the BIA to remand the matter to the IJ for reconsideration. The BIA obliged, acknowledging that the IJ had relied on the criminal charges in denying the petitioner's request for voluntary departure.

On remand, the IJ invited the petitioner to submit a declaration describing his version of the events surrounding the arrest. The petitioner declined the invitation. In reconsidering his earlier decision, the IJ noted that the dismissal of the criminal charges occurred only because the complaining witness had failed to appear for trial. The IJ further observed that the petitioner had offered no reason to doubt either the reliability of the police report or the truth of the facts set forth therein. The IJ concluded that the police report was probative, that reliance on it was appropriate under the circumstances, that the negative factors weighing against voluntary departure (principally, those related to the events described in the police report) outweighed any positive factors, and that an exercise of discretion in the petitioner's favor was therefore unwarranted.

The petitioner again appealed to the BIA. This time around, the BIA affirmed the IJ's denial of voluntary departure. In doing so, it concluded that the IJ had not afforded undue weight to the facts contained in the police report because the police report was probative of factors relevant to the discretionary

-4-

analysis and the petitioner was given every opportunity to refute the report's contents. This timely petition for judicial review followed.

## II. ANALYSIS

Voluntary departure is a discretionary form of relief. See 8 U.S.C. § 1229c(a)(1), (b)(1). It benefits both the government and the alien by enabling the former to expedite repatriation and the latter to avoid some of the harsh strictures that typically accompany removal. See Naeem v. Gonzales, 469 F.3d 33, 36-37 (1st Cir. 2006).

An alien may request voluntary departure either in lieu of removal, see 8 U.S.C. § 1229c(a)(1), or at the conclusion of removal proceedings, see id. § 1229c(b). In either event, the alien must show that he meets the relevant statutory requirements and that he merits a favorable exercise of discretion. See id. § 1229a(c)(4)(A); Matter of Arguelles-Campos, 22 I&N Dec. 811, 817 (BIA 1999); 8 C.F.R. § 1240.26(b)-(c). The record is murky as to whether the petitioner sought voluntary departure under section 1229c(a)(1) or section 1229c(b). Here, however, we need not probe this point: the statutory eligibility requirements are not in issue, and the agency refused to grant voluntary departure solely as a matter of discretion.

Against this backdrop, we turn to the petitioner's claims of error. Because the BIA adopted and affirmed the IJ's decision

yet supplied its own gloss, we review the tiered decisions as a unit. See Ramirez-Matias v. Holder, ___ F.3d ___, ___ (1st Cir. 2015) [No. 14-1056, slip op. at 5].

We start with the recognition that our jurisdiction to review decisions denying discretionary relief from removal is narrowly circumscribed. As a general rule, a federal court may not review the agency's discretionary decisionmaking in an immigration case (including orders granting or denying voluntary departure). See 8 U.S.C. § 1252(a)(2)(B)(i); Dada v. Mukasey, 554 U.S. 1, 11 (2008). "But this rule, like virtually every other general rule, admits of exceptions." Ramirez-Matias, ___ F.3d at ___ [slip op. at 7]. We may review such decisions to the extent that the assigned errors raise colorable constitutional claims or questions of law. See 8 U.S.C. § 1252(a)(2)(D); Ramirez-Matias, ___ F.3d at ___ [slip op. at 7].

Whether a claim fits within the confines of one of these exceptions depends on substance, not on form. See Ayeni v. Holder, 617 F.3d 67, 70-71 (1st Cir. 2010). "A bare allegation of either a constitutional shortfall or legal error will not transmogrify an unreviewable issue of fact into an issue reviewable by the courts." Id. at 71.

The petitioner here makes two related claims: he says that the IJ's and the BIA's decisions not only reflect an abuse of

discretion but also are tainted by legal error.[2]  With respect to the latter claim, he submits that the agency either ignored or misconstrued applicable precedents by relying on a police report that never culminated in a conviction and consisted mainly of untrustworthy "double-hearsay statement[s]."

The petitioner's first claim — abuse of discretion — is beyond the scope of judicial review.  It amounts to nothing more than a challenge to the way in which the IJ (and, on appeal, the BIA) weighed the facts.  As such, the claim is reminiscent of the claim presented in Ramirez-Matias, where the alien argued that the agency gave police reports "too much weight" and failed properly to assess their "probative value."  ___ F.3d at ___ [slip op. at 8]. We dismissed that claim for want of jurisdiction, holding that the petitioner's attack on the agency's discretionary decisionmaking was "hopelessly factbound." Id. at ___ [slip op. at 8]. Ramirez-Matias is controlling here.  Accordingly, we dismiss the petitioner's abuse of discretion claim for want of jurisdiction.

---

[2] In his reply brief, the petitioner makes yet a third claim: that his procedural due process rights were violated.  This claim is twice foreclosed.  For one thing, the petitioner failed to raise any due process argument before the BIA and, thus, we lack jurisdiction to consider such an argument now. See Wan v. Holder, ___ F.3d ___, ___ (1st Cir. 2015) [Nos. 13-1893, 14-1285, slip op. at 7] (explaining that an alien must exhaust all administrative remedies to confer jurisdiction on a federal court).  For another thing, the due process argument surfaced for the first time in the petitioner's reply brief and, therefore, has been waived. See Jupiter v. Ashcroft, 396 F.3d 487, 491 n.5 (1st Cir. 2005); Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1990).

See id. at \_\_\_ [slip op. at 9]; see also Castro v. Holder, 727 F.3d 125, 129-30 (1st Cir. 2013) (concluding that court lacked jurisdiction since petitioner's claims on appeal merely attacked factual findings); Ayeni, 617 F.3d at 72-73 (concluding that argument about weight afforded certain factors in a discretionary analysis was essentially attack on factual finding that did not raise reviewable constitutional or legal question); Elysee v. Gonzales, 437 F.3d 221, 223-24 (1st Cir. 2006) (concluding that claims that IJ disregarded certain factors and overvalued others did not raise colorable constitutional or legal questions).

While we lack jurisdiction to review the petitioner's claim that the agency abused its discretion in weighing the evidence, we may have jurisdiction to review his claim that the agency should not have considered the police report at all. This claim posits that the agency either ignored or misconstrued applicable precedents in failing to exclude as a matter of law a police report that consisted mainly of hearsay statements and described an arrest that never culminated in a conviction. As framed, this claim asks us to determine the contours of a legal standard governing the use of evidence; and "the choice and shape of an applicable legal standard is quintessentially a question of law." Ayeni, 617 F.3d at 71.

A case that aptly illustrates the dichotomy between the petitioner's legal standard claim and his abuse of discretion claim

is Barrera-Quintero v. Holder, 699 F.3d 1239 (10th Cir. 2012). There, the petitioner argued that the BIA misconstrued prior BIA precedents in determining whether he had voluntarily departed. See id. at 1244-45. The Tenth Circuit exercised jurisdiction to review the claimed legal error with respect to the interpretation of relevant precedents. See id. at 1245. But the court declined to reach the ultimate question of the petitioner's eligibility for discretionary relief, concluding that this question was so factbound as to fall outside the scope of judicial review. See id. at 1246-47.

Nor is this the first time that we have considered a single petition for judicial review that presents related claims that arguably fall on different sides of the jurisdictional divide. In Gonzalez-Ruano v. Holder, 662 F.3d 59 (1st Cir. 2011), the petitioner assigned error to the BIA's consideration of a prior state court criminal conviction in the discretionary evaluation of his request for special rule cancellation of removal. See id. at 64. We exercised jurisdiction to review the petitioner's legal claim concerning the BIA's interpretation of the relevant statute to ensure that the statute permitted consideration of the prior conviction. See id. Once we determined that the conviction was appropriately considered, however, we ruled that we lacked jurisdiction to review the agency's weighing of that conviction in the discretionary decisionmaking calculus. See id. at 64-65.

The issue in this case, however, is whether the legal standard claim advanced by the petitioner is colorable. That issue is close, but we need not grapple with it. Assuming, for argument's sake, that the petitioner's claim is colorable and that we therefore have jurisdiction to consider it, the claim is easily repulsed on the merits.

On this understanding, we review de novo the putatively colorable legal question of whether it was permissible for the agency to consider the police report. See Gonzalez v. Holder, 673 F.3d 35, 38 (1st Cir. 2012). We hold that there was no error in considering the police report even though it contained hearsay and the petitioner's arrest did not result in a conviction.

We do not write on a pristine page. As an initial matter, it is settled beyond hope of contradiction that in reviewing requests for discretionary relief, immigration courts may consider police reports even when they rest largely on hearsay. See Henry v. INS, 74 F.3d 1, 6 (1st Cir. 1996). There are, of course, limits — but those limits are generally satisfied as long as the trier first determines that the report is reliable and that its use would not be fundamentally unfair. See Matter of Teixeira, 21 I&N Dec. 316, 321 (BIA 1996); Matter of Grijalva, 19 I&N Dec. 713, 721-22 (BIA 1988). The applicable precedents were properly applied here. To begin, the IJ determined (and the BIA confirmed) that the police report was reliable and probative of the

petitioner's character. Similarly, both the IJ and the BIA determined that use of the police report was not fundamentally unfair since the petitioner was given an opportunity to challenge its veracity and refute its contents.

As long as the nature and stage of the proceedings are taken into account — as they were here — the case law does not categorically preclude the agency from considering a police report simply because the arrest detailed therein has not resulted in a conviction. See Henry, 74 F.3d at 6-7; White v. INS, 17 F.3d 475, 479-80 (1st Cir. 1994); Matter of Thomas, 21 I&N Dec. 20, 23-24 (BIA 1995). In Henry, for example, we sanctioned the agency's reliance on facts contained in a police report though the charges were still pending. See 74 F.3d at 5-7. We reasoned that, in the context of determining whether an alien warrants discretionary relief from removal, the fact of an arrest and its attendant circumstances, without more, may have probative value in assessing his character (and, thus, his suitability for discretionary relief).[3] See id. at 6.

---

[3] We note that both Henry and White were decided before Congress stripped the federal courts of the power to review discretionary decisions in immigration cases. See Illegal Immigration Reform & Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, Title III, § 306(a)(2), 110 Stat. 3009-546, 3009-607. Though decided under an earlier regime, those decisions remain apposite insofar as they construe BIA precedent relevant to the legal question of whether the agency may consider police reports in making discretionary determinations.

The petitioner asserts that <u>Matter of Arrequin</u>, 21 I&N Dec. 38 (BIA 1995), requires a different result. This assertion is groundless. While the BIA in that case afforded little weight to an arrest that did not result in prosecution, <u>see</u> <u>id.</u> at 42, we previously have explained that the decision in <u>Arrequin</u> rested on idiosyncratic facts and the case surely does not create an ironclad rule that an arrest without a subsequent conviction may never be considered in the discretionary relief context. <u>See</u> <u>Henry</u>, 74 F.3d at 6.

We conclude, therefore, that there is no per se bar to the agency's consideration of hearsay-laden police reports where convictions have not followed.[4] Other courts have reached the same conclusion. <u>See</u>, <u>e.g.</u>, <u>Paredes-Urrestarazu</u> v. <u>INS</u>, 36 F.3d 801, 810 (9th Cir. 1994); <u>Parcham</u> v. <u>INS</u>, 769 F.2d 1001, 1005 (4th Cir. 1985). It follows that neither the IJ nor the BIA committed any <u>legal</u> error by considering the police report describing the petitioner's arrest as a negative factor weighing against discretionary relief.

---

[4] We note that such a rule seems especially uncontroversial where, as here, the charges against the petitioner were dropped only because the complaining witness failed to appear for trial and any concern for fundamental fairness was fully addressed by affording the petitioner ample opportunity to challenge or refute the report.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, the petition for review is denied in part and dismissed in part.


**So Ordered.**