**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-2942

_____

DELROY RICARDO TOOMER,
a/k/a Rick Toomer,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A206-192-324)
Immigration Judge: Kuyomars Q. Golparvar

_____

Submitted pursuant to Third Circuit L.A.R. 34.1(a)
April 2, 2020

Before: GREENAWAY, JR., PORTER, and MATEY, *Circuit Judges*.

(Opinion filed: April 17, 2020)

_____

OPINION*

_____

_____

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does
not constitute binding precedent.

MATEY, *Circuit Judge.*

After an Immigration Judge ("IJ") determined he was removable from this country, Delroy Toomer applied to adjust his status to that of a lawful permanent resident. The IJ denied that application, and the Board of Immigration Appeals ("BIA") affirmed. Toomer now petitions for review of the BIA's decision. We will deny that petition.

## I. BACKGROUND

Toomer is a citizen of Jamaica. He came to the United States lawfully in 2011 but overstayed his visa. So the Department of Homeland Security ("DHS") issued a Notice to Appear charging him as removable. The IJ sustained the charge and released Toomer on bond. But while released, Toomer was convicted of carrying an unlicensed firearm. DHS argued that this conviction was another ground for removability, and the IJ agreed.

Toomer then applied to adjust his status to that of a lawful permanent resident. After a two-day hearing, the IJ held that Toomer met all the statutory requirements for adjustment. But the IJ concluded that Toomer failed to demonstrate sufficient positive factors to counterbalance the "many negative factors that weigh against him," (A.R. at 62), such as his gang affiliations, his involvement in drug trafficking, domestic violence incidents involving an ex-girlfriend, and the firearm conviction. The IJ therefore denied the application. On appeal, the BIA affirmed. Toomer now petitions this Court for review.[1]

---

[1] We generally lack jurisdiction to review the BIA's decisions on adjustment-of-status applications. 8 U.S.C. § 1252(a)(2)(B)(i). We may, however, review "colorable claims or questions of law, . . . such as whether the BIA misapplied [a] legal standard" when considering such applications. *Alimbaev v. Att'y Gen.*, 872 F.3d 188, 194 (3d Cir. 2017).

## II. DISCUSSION

### A.     The BIA Did Not Violate Its Own Precedent When Weighing the Equities

Toomer argues that the agency violated its decision in *Matter of Arreguin De Rodriguez*, 21 I. & N. Dec. 38 (BIA 1995), when balancing the equitable factors in his case. We disagree.

In *Arreguin*, a woman applied for a waiver of inadmissibility. *Id.* at 38. When balancing the equities, the IJ considered an arrest report noting the applicant's prior arrest for alien smuggling. *Id.* at 42. On appeal, the BIA said that report deserved "little weight" since the arrest did not lead to a conviction and since there was no corroboration of the report's underlying allegations. *Id.* The BIA also concluded that the IJ undervalued the applicant's positive factors. *Id.* This rebalancing complete, the BIA reversed the IJ's decision and granted the woman's application. *Id.* at 43.

Toomer argues that the agency violated *Arreguin* when it considered police reports revealing that he had been involved in domestic violence incidents. But "*Arreguin* did not indicate that it was per se improper to consider" such reports. *Sorcia v. Holder*, 643 F.3d 117, 126 (4th Cir. 2011); *see also Arias-Minaya v. Holder*, 779 F.3d 49, 54 (1st Cir. 2015) ("[*Arreguin*] does not create an ironclad rule that an arrest without a subsequent conviction may never be considered in the discretionary relief context."). Instead, *Arreguin* stands at most for the proposition that such reports do not deserve "substantial weight" in an

---

Our review of such claims and questions is plenary. *Id.* And where the BIA "deferred to or adopted the IJ's reasoning," we review the IJ's decision rather than the BIA's. *Cadapan v. Att'y Gen.*, 749 F.3d 157, 159 (3d Cir. 2014).

3

equitable balancing analysis. *Arreguin*, 21 I. & N. Dec. at 42; *see Avila-Ramirez v. Holder*, 764 F.3d 717, 725 (7th Cir. 2014) (remanding under *Arreguin* where the agency "gave . . . arrest reports significant weight"); *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 713 (6th Cir. 2004) (vacating under *Arreguin* where "concerns about [conduct contained in an arrest report] were the driving force behind the denial of" relief). And the domestic violence incidents here were only one of many negative factors, with no indication that the agency attached to them any unwarranted, outsized significance.

Toomer also argues that the agency violated *Arreguin* when it considered his gang affiliations and his involvement with drug trafficking. But *Arreguin* involved only bare, written reports. *See Arreguin*, 21 I. & N. Dec. at 42 ("Just as we will not go behind a *record of conviction* to determine the guilt or innocence of an alien, so we are hesitant to give substantial weight to an *arrest report*." (emphasis added)). In contrast, the evidence offered here in support of the drug and gang related allegations included live testimony from a federal law enforcement agent which, though hearsay, stemmed from communications with local law enforcement officials investigating ongoing criminal activity and Toomer's own statements to prison officials.

## B.     The Agency Did Not Violate Toomer's Due Process Rights

Toomer argues that the agency violated his Due Process rights by using hearsay evidence to prove his gang affiliations. We disagree.

Toomer bases this argument on *Ezeagwuna v. Ashcroft*, 325 F.3d 396 (3d Cir. 2003). There, a woman submitted several documents in support of her applications for asylum and withholding of removal. *Id.* at 398–99. The Government later presented a letter from the

4

United States Department of State describing "the results of an investigation" concluding that some of the woman's documents were fraudulent. *Id.* at 401–02, 411–12. Relying "almost entirely" on this letter, the BIA denied her applications. *Id.* at 405. We vacated, concluding that the hearsay letter was "neither reliable nor trustworthy," and that its use violated the woman's due process rights. *Id.* at 408.

*Ezeagwuna* is distinguishable in several respects. Toomer's gang affiliations were not the sole basis for the agency's decision. And while hearsay testimony showed some of his affiliations, the government also offered expert opinion testimony based on an independent investigation into social media posts. *Cf. Ezeagwuna*, 325 F.3d at 405 (noting that "the BIA's decision was based almost entirely on the [hearsay] letter," and that "[w]ithout the . . . letter, the majority of the BIA's reasoning actually supports [petitioner's] case"). The hearsay testimony was also only one level deep,[2] with the agent communicating directly with the local law enforcement officials whose statements he was repeating. *Cf. id.* at 406 (noting that the letter was quadruple hearsay, and that the immediate speaker "was unable to . . . evaluate the credibility of the immediate preceding declarant," who in turn may have relied solely on "notations written on [a] document" and thus "would also have been unable to judge the credibility" of the preceding declarant).

Toomer notes that the agent provided no information about the local law enforcement officials' investigations into his purported gang affiliations. *Cf. id.* at 408 (noting that, "partially due to the multiple levels of hearsay involved here, we have

---

[2] There is no per se bar against hearsay testimony in immigration proceedings. *See Kiareldeen v. Ashcroft*, 273 F.3d 542, 549 (3d Cir. 2001).

absolutely no information about what the [underlying] investigation consisted of, or how [it] was conducted"). But Toomer had a chance to inquire into those investigations on cross examination, so he cannot now raise his failure to do so as a defense. Toomer also notes that, after the hearing concluded, the Government submitted a memorandum memorializing statements he made to prison officials about his gang membership. *Cf. id.* at 406 ("[W]e are troubled by [the fact that] . . . the INS only provided the . . . letter to the IJ and [petitioner's] counsel . . . when it sought to introduce it into evidence."). But the agent discussed those statements at the hearing, so Toomer therefore cannot claim to have been unconstitutionally surprised by them.

## C.    The Agency Did Not Violate Toomer's First Amendment Rights

Toomer argues that the agency violated his First Amendment rights when it considered his gang membership as a negative factor. But "the Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing," *Dawson v. Delaware*, 503 U.S. 159, 165 (1992), and we see no reason why it would in this similar, equitable-balancing context. And here, the Government presented evidence connecting Toomer's gang membership to the illegal drug trade, an undeniably relevant consideration for the agency. *See id.* at 165–66 (holding that the introduction of evidence of defendant's membership in the Aryan Brotherhood violated the First Amendment because it was "totally without relevance to [the] sentencing proceeding" while noting that "[i]n many cases, . . . associational evidence might serve a legitimate

6

purpose in showing that a defendant represents a future danger to society," such as when the defendant's organization advocates for criminal activity). So we reject this argument.

### III. CONCLUSION

For those reasons, we will deny Toomer's petition for review.