# United States Court of Appeals
## For the First Circuit

No. 24-1299

LESBIA ASUCENA ALAY,

Petitioner,

v.

PAMELA BONDI, Attorney General,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
Howard and Thompson, Circuit Judges.

Randy Olen for petitioner.

Jessica D. Strokus, Trial Attorney, Office of Immigration Litigation, Civil Division, with whom Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, and Anthony C. Payne, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

July 16, 2025

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Pamela Bondi is automatically substituted for former Attorney General Merrick B. Garland as respondent.

BARRON, **Chief Judge**.  Lesbia Asucena Alay petitions for review of an order from the Board of Immigration Appeals (BIA) that affirmed the denial of her application for cancellation of removal.  She challenges the BIA's order affirming the ruling by the Immigration Judge (IJ) that she failed to establish that her removal would result in "exceptional and extremely unusual hardship" to her two United States citizen children.  8 U.S.C. § 1229b(b)(1)(D).  We deny the petition.

**I.**

In 2013, the U.S. Department of Homeland Security initiated removal proceedings against Alay, a native and citizen of Guatemala.  Alay conceded her removability.  She sought, however, cancellation of removal.[1]

"Cancellation of removal permits a noncitizen to remain in the country lawfully" if she "meets certain statutory criteria." Wilkinson v. Garland, 601 U.S. 209, 212 (2024).  To qualify, the applicant must, in relevant part: (1) "ha[ve] been physically present in the United States for a continuous period of not less than 10 years" before the application; (2) "ha[ve] been a person of good moral character during such period"; (3) not have been convicted of certain offenses; and (4) "establish[] that removal would result in exceptional and extremely unusual hardship to [her]

_____

[1] Alay also applied for asylum and withholding of removal but later withdrew those applications.

- 2 -

spouse, parent, or child, who is a citizen of the United States or . . . lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1).

The applicant bears the burden of proving to an immigration judge that she meets these requirements. 8 U.S.C. § 1229a(c)(4)(A). "After determining whether [the applicant has] me[t] these criteria, [the immigration judge] . . . decides whether to exercise discretion to cancel the order of removal in [that] particular case." Wilkinson, 601 U.S. at 213.

In December 2019, the IJ assigned to Alay's case denied her application for cancellation of removal. The IJ concluded that Alay had not satisfied the fourth statutory criterion -- that a qualifying relative would suffer "exceptional and extremely unusual hardship" as a "result" of her removal.[2] 8 U.S.C. § 1229b(b)(1)(D).

The IJ found as follows. Alay has two qualifying relatives: her sons, A.L. and F.L., both of whom are United States citizens. Both sons currently attend Catholic school and "have lived with their mother and father in a secure and stable environment for the majority of their life." A.L. is "healthy,"

---

[2] The IJ also concluded that Alay had not shown that she merits a favorable exercise of discretion. The BIA, however, did not rely on that ground to affirm the IJ's decision. We thus do not address it.

wants "to go to the army and college," and includes "engineering" among his "career goals."

In considering the hardship that A.L. and F.L. would suffer because of Alay's removal, the IJ credited Alay's testimony that "there's a lot of sad things" in Guatemala and noted that this testimony was "certainly corroborated by the country conditions evidence."[3] Based on Alay and A.L.'s testimony, however, the IJ found that both "children would remain with [Alay's] husband in the United States." In addition, the IJ observed that Alay "specifically testified" that her husband "would be able to care for and support their children here," and that there was "no evidence to the contrary." The IJ, citing BIA precedent, "declined to speculate on the likelihood" that Alay's husband "will be placed in [removal] proceedings, or what will happen if that occurs" (quoting In re Calderon-Hernandez, 25 I. & N. Dec. 885, 887 (BIA 2012)).

The IJ recognized that A.L. and F.L. would face hardship due to the "loss of income from [Alay's] employment." The IJ explained, however, that "absent truly compelling circumstances, a child who loses economic and educational opportunities in the

---

[3] The IJ noted that that evidence detailed "human rights violations ranging from corruption, lack of accountability for past human rights violations, violence by criminal organizations, including extortion, and high levels of impunity, including violence against journalists and violations of . . . women's and girls' rights."

United States by virtue of his parents' removal from the United States does not thereby establish exceptional and extremely unusual hardship because such losses, while regrettable, are by no means exceptional and extremely unusual."

The IJ separately found that A.L. and F.L. would experience hardship from the "loss of [their] companion and parent." The IJ noted that both sons "have lived with their mother and father in a secure and stable environment for the majority of their li[ves]" and observed that Alay's case for cancellation of removal was "highly sympathetic" and that "potentially separat[ing]" Alay from her sons "at this stage of their development seems particularly harsh." The IJ nonetheless concluded that "such separation is what's normally expected to result from [the] removal of a parent with close family members here in the United States," and thus "does not amount to exceptional and extremely unusual hardship, let alone extreme hardship."

The IJ concluded the hardship analysis by observing that A.L. and F.L. would "certainly" suffer "hardship" in the form of "loss of income, loss of a close family member [who has] been close their entire life to the qualifying relatives, [and] loss of a parent potentially for at least 10 years." The IJ nonetheless concluded that these hardships were not "substantially beyond that which would be normally expected from removal" -- and that, as a

result, Alay had not shown that she was statutorily eligible for cancellation of removal.

The BIA affirmed. It "recognize[d] . . . that [Alay's] children, who will remain in the United States, will face some hardship in the event of her removal to Guatemala," including "hardship in the form of separation from their mother, and the resulting loss of emotional and economic support." But it noted that A.L. and F.L. were "healthy and doing well in school" (footnote omitted). The BIA explained that "[u]nder these circumstances, the [IJ] properly determined that the hardship [Alay's] children will experience upon her removal to Guatemala is consistent with the hardship that would ordinarily result from the removal of a close family member from the United States." Thus, the BIA affirmed the IJ's denial of Alay's application for cancellation of removal.

Alay timely petitioned for our review.

## II.

"When, as here, 'the BIA adopts the IJ's opinion and discusses some of the bases for the IJ's decision, we . . . review both the IJ's and the BIA's opinions.'" Vallejo Piedrahita v. Mukasey, 524 F.3d 142, 144 (1st Cir. 2008) (quoting Ouk v. Gonzales, 464 F.3d 108, 110 (1st Cir. 2006)). "When we analyze the IJ and BIA's opinions 'as a unit,' we refer to the IJ and BIA collectively as 'the agency.'" Duarte De Martinez v. Bondi, 132

- 6 -

F.4th 74, 78 (1st Cir. 2025) (quoting Khalil v. Garland, 97 F.4th 54, 61 (1st Cir. 2024)).

## III.

To satisfy the "exceptional and extremely unusual hardship" standard, an applicant "must demonstrate that [a] qualifying relative would suffer hardship that is 'substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family members here.'" In re Garcia, 28 I. & N. Dec. 693, 706 (BIA 2023) (quoting In re Monreal-Aguinaga, 23 I. & N. Dec. 56, 65 (BIA 2001)). Proper considerations include the "age[], health, and circumstances" of the qualifying relative. Monreal-Aguinaga, 23 I. & N. Dec. at 63. At bottom, each "hardship case ultimately succeeds or fails on its own merits and on the particular facts presented." In re Gonzalez Recinas, 23 I. & N. Dec. 467, 470 (BIA 2002).

The "exceptional and extremely unusual hardship" standard does not require a level of hardship that would be "unconscionable," Monreal-Aguinaga, 23 I. & N. Dec. at 60-61, but it "is supposed to be hard to meet," Tacuri-Tacuri v. Garland, 998 F.3d 466, 474 (1st Cir. 2021). This aspect of the standard accords with the fact that "the hardships typically felt by children whose parents are removed from the country" represent a type of hardship that "itself sets a high bar." Id. (citing Monreal-Aguinaga, 23 I. & N. Dec. at 63; and Gonzalez Recinas, 23 I. & N. at 470).

- 7 -

## A.

We begin with Alay's contention -- insofar as she means to advance it -- that the agency "overlooked . . . evidence regarding the factors to be considered in the hardship analysis." A claim that the agency "fail[ed] . . . to consider significant record evidence" is a claim of legal error over which we have jurisdiction. Contreras v. Bondi, 134 F.4th 12, 21 (1st Cir. 2025); see id. at 20-21. Assuming that Alay's contention is properly understood to constitute such a claim of legal error, we conclude that, reviewing de novo, id. at 20, it provides no basis for overturning the agency's denial of her application for cancellation of removal.

Some of the evidence that Alay points to in pressing this claim of legal error concerns the adverse impact that Alay's removal would have on either her eldest daughter, her mother-in-law, or both. But the exceptional and extremely unusual hardship standard "must be assessed solely with regard to the qualifying relatives in th[e] case," Gonzalez Recinas, 23 I. & N. Dec. at 470 (emphasis added), and Alay's daughter and mother-in-law are not qualifying relatives under 8 U.S.C. § 1229b(b)(1)(D). Thus, the claimed failure by the agency here provides no basis for overturning the agency's decision.

Alay also contends that the agency failed to "note the evidentiary importance of" her "[l]ength of residence in the United

- 8 -

States." She directs our attention specifically to the fact that she "has resided continuously [here] since 2000," and thus "well over half her lifetime."

Again, however, "[f]actors relating to the applicant" may only be considered as part of that inquiry "insofar as they may affect the hardship to a qualifying relative." Monreal-Aguinaga, 23 I. & N. at 63. Because Alay does not explain how her length of residence would result in hardship to A.L. or F.L., this aspect of her failure-to-consider-evidence claim also fails.

This same problem stands in the way of her contention that the agency committed legal error by failing to consider evidence that she "suffers from arthritis, . . . anxiety and depression." Although she contends that the agency did "not recognize this factor as one deserving meaningful analysis," she does not attempt to tie these health conditions to the hardship that A.L. and F.L. would face upon her removal.

True, Alay questions "[h]ow . . . the children [will] be affected by the knowledge that their mother is now living in an indisputably dangerous environment." But she does not direct us to any record evidence that would suggest that such hardship would result in or contribute to hardship "substantially beyond that which would ordinarily be expected to result from [a parent's] departure." Gonzalez Recinas, 23 I. & N. Dec. at 468. We therefore

cannot say that the agency erred in "overlook[ing]" the evidence that she "suffers from arthritis, . . . anxiety and depression."

Alay also contends that the agency failed to consider the evidence showing both her community involvement and her immigration history.  But because she does not explain how these circumstances would result in hardship to A.L. or F.L., this aspect of her challenge fails for by now familiar reasons.

In what appears to be the final aspect of her challenge to the agency's failure to consider certain evidence, Alay contends that the agency did "not consider[]" that she "has no other means of adjusting her status . . . beyond the IJ's speculation that her children could petition for her when they are 21 years old."  She further asserts that "[t]his speculation was devoid of any contemplation of how [her] removal might affect any attempt to return."

The agency recognized, however, that A.L. and F.L. would "certainly" face "hardship" in the form of "the loss of a parent potentially <u>for at least</u> 10 years or until the children turn 21 and can petition for" Alay (emphasis added).  It simply concluded that such hardship -- even when aggregated with the other hardships -- would not be "substantially beyond that which would be normally expected from removal."  Thus, we cannot agree that the agency failed to consider how her inability to adjust her status would result in hardship to A.L. or F.L.

- 10 -

**B.**

Alay's next ground for challenge rests on her assertion that the agency failed to "meaningfully evaluate[]" the exceptional and extremely unusual hardship standard "in relation to the facts and circumstances of [her] individual case." More specifically, she contends that although each "case must be considered on its own individual facts," In re Andazola-Rivas, 23 I. & N. Dec. 319, 323 (BIA 2002), the agency failed to conduct an "individualized assessment" of the hardship that A.L. and F.L. would suffer in this case.

Here, Alay does not appear to be contending that the agency failed to consider any specific evidence. Rather, she appears to contend that, in considering the evidence she put forth, it failed to make an individualized assessment of the claimed hardship to her qualifying relatives.

This claim too is one of legal error -- and so one that we have jurisdiction to address. See Rosa v. Garland, 114 F.4th 1, 14 (1st Cir. 2024) (holding that the agency's failure to follow its own binding precedent is a claim of legal error which we have jurisdiction to review). But, reviewing de novo, Arias-Minaya v. Holder, 779 F.3d 49, 53-54 (1st Cir. 2015), we again discern no basis for overturning the agency's denial of her application for cancellation of removal.

- 11 -

First up is Alay's contention that the agency failed to "meaningfully evaluate[]" the hardship that A.L. and F.L. would face because of the "loss of half of the family's income" that would result from Alay's removal. The petition asserts that, rather than "meaningfully consider[ing]" the "serious[]" impact that this loss will have on A.L. and F.L.'s "future," the agency "repeatedly invok[ed] platitudes" regarding the economic harms that ordinarily result from removal and failed to "individual[ly] assess[]" how the loss of Alay's income would impact A.L. and F.L.'s educational opportunities and standard of living.

The IJ's analysis, however, detailed A.L. and F.L.'s economic and educational circumstances. It noted, for example, that both children attend Catholic school and A.L. aspires to "go to the army and college" and become an engineer. It then explained that, against this backdrop, A.L. and F.L. would suffer hardship from the "loss of income from [Alay's] employment as a car detailer" -- including "los[s of] economic and educational opportunities." And the analysis then went on to conclude that "such losses, while regrettable, are by no means exceptional and extremely unusual for aliens who have close family members who are removed" (citing <u>Andazola-Rivas</u>, 23 I. & N. Dec. at 323). We cannot agree, therefore, that the agency's acknowledgement that the "los[s of] economic and educational opportunities" that A.L.

and F.L. face is not "exceptional and extremely unusual for aliens who have close family members" here reveals that it failed to consider their individual circumstances. After all, the hardship inquiry "necessarily" requires "compari[son] . . . to the hardship others might face." Andazola-Rivas, 23 I. & N. Dec. at 323.

**2.**

Alay also contends that the agency failed to "meaningfully evaluate[]" the hardship that A.L. and F.L. would suffer from being separated from her. In support of this aspect of the challenge, the petition highlights that A.L. testified that Alay "is everything" to F.L. and that F.L. "can't live without his mom." The petition asserts that the agency failed to consider the hardship that F.L. would endure, given this testimony and F.L.'s young age. It also asserts, separately, that the agency failed to "explore the actual effect of the separation from A.L." -- though Alay identifies no particular circumstances that would enhance the hardship to A.L.[4]

The IJ's analysis, however, explicitly considered each of the circumstances that Alay raises in her petition. Indeed, the IJ "recognize[d] that the children live and have lived with

_____

[4] Alay also highlights that the agency did not consider the effect that Alay's separation would have on "her husband of many years." Her husband, however, is not a qualifying relative. And Alay does not explain how her husband's separation-based hardship would result in further hardship to A.L. or F.L.

- 13 -

their mother and father in a secure and stable environment for the majority of their life," and that "there would be hardship, including . . . loss of a companion and parent, and separation." The IJ also acknowledged A.L.'s "conflicted and indeed emotional [testimony] about the prospect of having to confront [Alay's] removal and [her] return to Guatemala." And the IJ recognized that "potentially separat[ing]" the children "at this stage of their development seems particularly harsh."

To be sure, the agency did conclude that the hardship that A.L. and F.L. would face due to their separation was not "exceptional and extremely unusual" because "separation is what's normally expected to result from removal of a parent with close family members here." But the agency did so notwithstanding its recognition of the "highly sympathetic" circumstances of this case. Thus, we cannot agree that the agency failed to "meaningfully" consider any separation-based hardship in this case in relation to the individual circumstances of A.L. and F.L.

**3.**

Alay's final contention is that the agency failed to provide an "individualized assessment" of how the country conditions in Guatemala would result in hardship to A.L. and F.L. She acknowledges that the agency considered the country conditions in Guatemala. But she asserts that the agency erred in failing to consider how A.L. and F.L. "would . . . be affected by the

- 14 -

knowledge that their mother faces" these conditions, particularly given "A.L.'s emotional testimony elicit[ing] their concern for their mother's well-being in Guatemala."

As we have explained, however, the agency explicitly considered A.L.'s "conflicted and indeed emotional [testimony] about the prospect of having to confront [Alay's] removal and return to Guatemala."  It also noted Alay's testimony regarding the conditions in Guatemala and detailed how it was "certainly corroborated by the country conditions evidence."  Thus, we cannot agree that the agency failed to "meaningfully evaluate" the hardship that would accrue to A.L. and F.L. in particular, given their knowledge of the country conditions that their mother would face.

## IV.

For the foregoing reasons, the petition for review is therefore **denied**.