# United States Court of Appeals
## For the First Circuit

No. 21-1395

ROOBENS MAURICE,

Petitioner,

v.

PAMELA J. BONDI,
Attorney General,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

---

Before

Barron, Chief Judge,
Gelpí and Aframe, Circuit Judges.

---

Melanie Chaput, with whom Chaput Law Office was on brief, for petitioner.

Allison Frayer, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, with whom Brian Boynton, Principal Deputy Assistant Attorney General, Civil Division, and Jennifer Levings, Assistant Director, Office of Immigration Litigation, United States Department of Justice, were on brief, for respondent.

---

October 2, 2025

---

**AFRAME**, **Circuit Judge**.  Roobens Maurice, a native and citizen of Haiti, petitions for review of the administrative denial of his applications for adjustment of status and cancellation of removal.  Maurice argues that the Board of Immigration Appeals ("BIA") erred in affirming the Immigration Judge's ("IJ") decision because the BIA (1) improperly relied on police reports arising from his 2018 and 2020 arrests in denying him adjustment of status and (2) incorrectly determined that he was ineligible for cancellation of removal.  We grant the petition, vacate the BIA order insofar as it pertains to adjustment of status, and remand for further proceedings in accord with this decision.

## I.

Maurice entered the United States on a temporary visa in April 2010.  Less than two years later, on February 28, 2012, Maurice received a "notice to appear," see 8 U.S.C. § 1229(a)(1), charging him with removability for overstaying his visa.  The notice to appear contained the date, time, and location of Maurice's scheduled removal hearing.  In May 2012, an IJ administratively closed Maurice's case as Maurice had obtained temporary protected status.  The Department of Homeland Security periodically extended Maurice's temporary protected status for the next five years until July 2017.

In November 2018, the Department of Homeland Security denied for cause Maurice's application to further extend his

protected status. The next month, on December 10, 2018, Maurice was arrested in New Hampshire and charged with stalking and domestic violence for entering his estranged wife's home through a window in violation of a bail order that prohibited contact with his wife. The case was ultimately dropped. Roughly a year and a half later, on May 15, 2020, New Hampshire police arrested Maurice for simple assault domestic violence arising from a dispute with his wife. During the dispute, Maurice hit his wife in the jaw with a drill. She was subsequently hospitalized for minor injuries. Almost two months after, on July 7, 2020, Maurice was arrested again in New Hampshire for simple assault domestic violence and resisting arrest outside his home after an argument with another woman with whom he was intimate. On that occasion, Maurice was arrested after being located by a police dog near his property.

Following this last arrest, the Department of Homeland Security detained Maurice and initiated removal proceedings. On October 2, 2020, the IJ convened a hearing during which he determined that Maurice had overstayed his visa and was removable from the United States. Maurice sought adjustment of status through his wife. Maurice also applied for cancellation of removal, asylum, withholding of removal, protection under the Convention Against Torture ("CAT"), and voluntary departure.

Following testimony from Maurice, his wife, mother, and sister, the IJ issued an oral decision denying Maurice relief. The IJ began by assessing the credibility of Maurice and his wife. The IJ found their testimonies about their personal stories credible. However, the IJ found inconsistencies in their statements about Maurice's arrests. Because of these inconsistencies, as well as the fact that the police reports were drafted closer in time to the events at issue, the IJ "g[a]ve more weight" to the police reports that involved Maurice's wife.

Turning to Maurice's request for adjustment of status, the IJ denied the request as a matter of discretion. The IJ noted Maurice's positive factors, including his familial ties to the United States, his extended time in the country, his letters of support, and the hardship his removal would pose for his immediate family. The IJ also considered Maurice's negative factors, focusing specifically on three of Maurice's arrests.

Regarding Maurice's prior arrests, the IJ first referenced the May 2020 incident during which Maurice struck his wife in the jaw with a drill. The IJ noted that Maurice admitted to accidentally striking his wife, while Maurice's wife testified "she was not struck with anything." Considering the inconsistent testimony and giving "strong weight to [representations in] the police report," the IJ concluded that Maurice had struck his wife with the drill and that she had been taken to the hospital.

The IJ next addressed the July 2020 arrest where police had been called after Maurice had gotten into a dispute with a woman who was not his wife. Relying on Maurice's testimony, the IJ determined that Maurice had seen law enforcement arrive at the premises, had left the premises, and had ultimately been apprehended with the assistance of a police dog.

Finally, the IJ made a brief reference to Maurice's 2018 arrest. On this occasion, Maurice was arrested for entering his wife's home in violation of a bail order prohibiting contact with his wife, an incident the IJ described loosely as "the information with regard to the stalking."

The IJ acknowledged the recency of these three incidents and stated that he gave the events "great weight." The IJ added that Maurice had taken "no responsibility for his actions" and had failed to participate in counseling with his wife. The IJ concluded that, because the negative factors outweighed the positive ones, he would exercise his discretion to deny Maurice adjustment of status.

The IJ similarly denied Maurice's application for cancellation of removal. The IJ found that Maurice failed to establish continuous physical presence in the United States for the requisite ten years. See 8 U.S.C. § 1229b(b)(1). The IJ determined Maurice had been served a notice to appear less than two years after arriving in the United States that stopped the

clock as to the physical presence requirement, making Maurice ineligible for cancellation of removal under section 1229b(d)(1)(A). The IJ likewise denied Maurice's asylum, withholding of removal, CAT protection, and voluntary departure claims. The IJ ordered Maurice removed to Haiti.

Maurice appealed to the BIA. He claimed that the IJ erroneously denied his requests for adjustment of status, cancellation of removal, asylum, and withholding of removal.[1] Relevant for present purposes, Maurice challenged the IJ's denial of his adjustment-of-status application on the basis that the IJ gave undue weight to the police reports, which Maurice characterized as unreliable. Maurice asserted that relying on the reports was fundamentally unfair. He argued that the reports were contradicted by other testimony, that they contained uncorroborated hearsay, that the officers who drafted the reports did not testify, and that the arrests described in the reports did not result in convictions. Maurice separately asserted, on largely the same grounds, that the agency did not afford him adequate process, thereby violating the Due Process Clause of the Fifth Amendment.

---

[1] Although Maurice made passing references to CAT protection, the BIA ultimately determined that Maurice on appeal "d[id] not challenge the [IJ]'s findings" as to CAT protection and accordingly deemed any CAT argument waived. Additionally, because Maurice does not challenge the BIA's denial of his asylum and withholding of removal claims, we do not discuss them further.

Maurice also challenged the IJ's denial of his application for cancellation of removal. Maurice argued that because his notice to appear did not contain the time and place of his removal proceedings as required by Pereira v. Sessions, 585 U.S. 198, 202 (2018), the IJ should have found that Maurice was continuously physically present in the United States for the requisite ten years and thus was eligible for cancellation of removal.

The BIA denied Maurice's appeal. Concerning Maurice's adjustment-of-status challenge, the BIA noted that the IJ had "determined that the [police] reports were reliable and probative of [Maurice]'s character, particularly because [Maurice] ha[d] not demonstrated that their contents were prepared with bias or [were] otherwise unreliable." The BIA stressed that "hearsay is admissible if it is reliable and probative" and that the officers who drafted the reports did not need to testify because "direct evidence is not required in immigration proceedings." The BIA similarly concluded that because Maurice "was given an opportunity to challenge the veracity and refute the contents of the police reports," it was "not persuaded that the use of such reports was fundamentally unfair."

As for the IJ's substantial reliance on the police reports, the BIA held that the IJ was permitted to "consider evidence of criminal conduct that ha[d] not culminated in a final

conviction when adjudicating an application for discretionary relief." The BIA acknowledged that Maurice "testified that he [had] struck [his wife] accidentally," whereas "his wife testified that she was not struck at all." Acknowledging the "discrepant testimony" and the fact that the police reports were composed "closer in time to the events," the BIA determined that it was "not persuaded that the [IJ] erred in [giving] greater weight to the version of events contained in the police documents."

Satisfied that the IJ had appropriately relied on the police reports, the BIA affirmed the IJ's denial of adjustment of status as a matter of discretion. The BIA specifically pointed to Maurice's "history of violence and criminal behavior." In addition to the incident with the drill, the BIA noted Maurice's "2020 arrest for domestic assault and resisting arrest, and his 2018 arrest for stalking, which shows that he made prohibited contact with his wife in violation of his bail order for a previous arrest for domestic violence."

The BIA also affirmed the IJ's denial of Maurice's application for cancellation of removal. The BIA held, contrary to Maurice's assertion, that the notice to appear served on Maurice in February 2012 did provide a specific time and place for his removal hearing. And because Maurice's notice to appear was served roughly two years after his arrival in the United States, the BIA affirmed the IJ's determination that Maurice was statutorily

ineligible for cancellation of removal. Maurice timely petitioned this Court for review.

## II.

Maurice challenges the BIA's affirmance of the IJ's denial of his applications for adjustment of status and cancellation of removal. We begin with adjustment of status.

## A.

We focus our review on the BIA's final decision except where the BIA has "deferred to or adopted the IJ's reasoning," in which case we review the BIA and IJ's decisions as a unit. See Rosa v. Garland, 114 F.4th 1, 8-9 (1st Cir. 2024) (quoting Chavez v. Garland, 51 F.4th 424, 429 (1st Cir. 2022)). We generally lack jurisdiction to review the agency's "discretionary denial of [p]etitioner's application for adjustment of his immigration status." Moreno v. Garland, 51 F.4th 40, 44 (1st Cir. 2022) (emphasis omitted) (citing 8 U.S.C. § 1252(a)(2)(B)). We do, however, retain jurisdiction where a petitioner raises "colorable constitutional claims or questions of law." See Arias-Minaya v. Holder, 779 F.3d 49, 52 (1st Cir. 2015) (citing 8 U.S.C. § 1252(a)(2)(D)).

Maurice makes two primary arguments over which we have jurisdiction to challenge the denial of his adjustment-of-status petition. He first argues that the agency failed to make a pair of necessary findings before relying on the police reports:

(1) that the reports were reliable and (2) that their use was not fundamentally unfair. Maurice separately contends that the agency violated BIA precedent in giving substantial weight to uncorroborated police reports that did not result in convictions. We consider the arguments in turn, starting with the police reports' reliability.

The agency may consider a police report "as long as the trier first determines that the report is reliable and that its use would not be fundamentally unfair." Arias-Minaya, 779 F.3d at 54; see also Rosa, 114 F.4th at 9. For this Court to consider Maurice's argument that the agency failed to make an express reliability finding, Maurice first had to raise that claim with the agency. See 8 U.S.C. § 1252(d)(1) (stating that "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right"). He did not. While Maurice claimed in his appeal to the BIA that the police reports were, in fact, unreliable, he did not assert the distinct argument that the IJ failed to make an express reliability finding. Because Maurice did not properly exhaust this argument with the BIA, we cannot consider it here. See Paiz-Morales v. Lynch, 795 F.3d 238, 241 n.1 (1st Cir. 2015) ("Because [petitioner] did not raise this claim before the BIA, we do not have jurisdiction to review it here.").

Turning to the fundamental fairness requirement, Maurice contends that the IJ erred in not making a finding as to whether the use of the police reports was fair. While Maurice properly preserved this argument, the argument nonetheless fails on the merits. There is no requirement for the agency to make such an express fairness finding prior to relying on a police report. Rosa, 114 F.4th at 11-12. "[S]o long as the agency provides the petitioner an opportunity to be heard, it satisfies the required fundamental fairness finding." Id. at 11; see also Arias-Minaya, 779 F.3d at 54 (finding that the use of a police report was not fundamentally unfair "since the petitioner was given an opportunity to challenge its veracity and refute its contents"). Here, Maurice had ample opportunity to challenge the veracity of the police reports. Lee v. Barr, 975 F.3d 69, 75 (1st Cir. 2020) ("[The] opportunity to rebut a report bearing such indicia of reliability allows us to say in this context that use of the report was not fundamentally unfair."). And Maurice took advantage of that opportunity by testifying himself and calling other witnesses to testify as to the circumstances represented in the reports. We therefore conclude the agency satisfied the fundamental fairness requirement.

We next address Maurice's challenge to the IJ's decision to give substantial weight to police reports that had not resulted in convictions and for which, he contends, there was no

corroborating evidence.  Maurice claims that in giving the police reports substantial weight, the agency violated its own precedent, In re Arreguin De Rodriguez (Arreguin), 21 I. & N. Dec. 38, 42 (BIA 1995), thereby warranting remand.

Whether the agency has "exceeded the scope of its binding precedent . . . is a legal question that we have jurisdiction to review under 8 U.S.C. § 1252(a)(2)(D)."  Rosa, 114 F.4th at 14. The agency may "generally consider a police report . . . when making a discretionary immigration decision, even if an arrest did not result in a charge or conviction."  Mele v. Lynch, 798 F.3d 30, 32 (1st Cir. 2015).  However, Arreguin requires that to give such reports "substantial weight," there must be "corroborating evidence of the [report's] allegations."  Rosa, 114 F.4th at 17 (quoting Arreguin, 21 I. & N. Dec. at 42).

Here, it is undisputed that Maurice was not convicted in connection with the conduct alleged in the 2018 and 2020 police reports.  It is also clear that the agency gave these police reports substantial weight -- the denial of Maurice's application for adjustment of status principally relied on the misconduct described in the police reports as well as derivative considerations, such as Maurice's absence of remorse and his failure to engage in rehabilitation following the alleged incidents described in the reports.  Thus, "the only remaining question [for the BIA was] whether this record contains"

- 12 -

corroborating evidence such that it was permissible for it to give substantial weight to the police reports in affirming the denial of adjustment-of-status relief.  Rosa, 114 F.4th at 22 (citing Arreguin, 21 I. & N. Dec. at 42).

The government acknowledged at oral argument that neither the IJ nor the BIA made an express corroboration finding. It nevertheless contends that the BIA satisfied the corroboration requirement because the record contains information, coming from Maurice's own testimony, that corroborates the police reports.  In particular, the government argues that Maurice testified to the events represented in the December 2018 stalking report insofar as he admitted that despite being subject to a stay-away order from his estranged wife, he nonetheless entered her apartment unannounced through a window.  The government likewise points to Maurice's testimony confirming aspects of the May 2020 arrest, where he admitted to striking his wife in the jaw with a drill, albeit accidentally.  And finally, the government notes Maurice's testimony regarding the July 2020 arrest where, following an argument with a separate woman, he was arrested near his property.

The government accurately recounts Maurice's testimony during his removal hearing before the IJ.  The problem, however, is that there is no indication from the BIA's decision that it viewed Maurice's testimony as corroborating the police reports. In fact, nothing in the BIA's decision indicates that it

appreciated the additional corroboration requirement that under Arreguin is necessary, absent a conviction, to give substantial weight to a police report when making a discretionary immigration decision. See Rosa, 114 F.4th at 18 (citing Arreguin, 21 I. & N. Dec. at 42).

Here, the BIA first addressed whether the police reports were reliable and their use was fundamentally fair such that it was permissible to rely on the hearsay contained in them. These considerations are distinct from the additional requirement that a police report, absent a conviction, must be corroborated before the agency may give the report substantial weight in denying adjustment of status as a matter of discretion. See Rosa, 114 F.4th at 18 (citing Arreguin, 21 I. & N. Dec. at 42).

The BIA then addressed whether the IJ erred in giving greater weight to the police reports than Maurice's and his wife's testimony. The BIA stated that the IJ relied on the police reports because he "found that [Maurice's] and his wife's testimony regarding the domestic violence incidents differed from the details contained in the police reports." The BIA concluded that in light of "the discrepant testimony," it was "not persuaded that the [IJ] erred in according greater weight to the version of events contained in the police documents."

Notwithstanding the government's present reliance on Maurice's testimony as evidence of corroboration, the BIA's actual

- 14 -

discussion of Maurice's hearing testimony does not suggest that the BIA considered the testimony for its corroborative nature. Rather, the BIA appears to have determined that the IJ permissibly relied on the police reports as a basis for resolving inconsistencies between Maurice's and his wife's hearing testimony.

On this record, we cannot conclude that the BIA considered whether the police reports were corroborated before giving those reports substantial weight in denying Maurice adjustment of status. See Rosa, 114 F.4th at 21-22 (citing Arreguin, 21 I. & N. Dec. at 42). Nor does the government ask us to deem any such error harmless. In accordance with the ordinary remand rule, Martinez v. Bondi, 132 F.4th 74, 84-85 (1st Cir. 2025), we therefore vacate the order denying Maurice's application for adjustment of status and remand for the BIA to consider whether the administrative record contains corroboration for the police reports relied on to deny Maurice relief.[2] See Rosa, 114 F.4th at

---

[2] Maurice makes a related argument that the agency violated his due process rights under the Fifth Amendment by giving significant weight to police reports without providing him a meaningful opportunity to challenge their reliability. Maurice has not shown that he has a protected property or liberty interest in such relief and thus, "cannot meet his burden to show that he was deprived of such an interest without due process of law." Thomas v. Garland, 25 F.4th 50, 55 (1st Cir. 2022); see also Naeem v. Gonzales, 469 F.3d 33, 38–39 (1st Cir. 2006) (finding petitioner "ha[d] no protected property or liberty interest in reopening proceedings, adjustment of status, or voluntary departure" and thus "may not base a due process claim on a denial thereof").

22 (remanding for the agency to determine whether the administrative record contains corroboration).

**B.**

Finally, we address Maurice's challenge to his application for cancellation of removal. To be eligible for cancellation of removal, an applicant must demonstrate continuous physical presence in the United States for at least ten years. See 8 U.S.C. § 1229b(b)(1)(A). However, the clock stops on the ten-year requirement when an individual is served a notice to appear that includes, among other details, the date, time, and place of an initial removal hearing. See Pereira, 585 U.S. at 201-02 (stating that the "period of continuous physical presence is 'deemed to end'" when the nonpermanent resident is served with a notice to appear (quoting 8 U.S.C. § 1229b(d)(1)(A))).

It is undisputed that Maurice was admitted to the United States on April 6, 2010. Less than two years later, on February 28, 2012, he was served with a notice to appear. The clock on Maurice's physical presence in the United States thus stopped roughly two years after he entered the country. See 8 U.S.C. § 1229b(d)(1)(A). The agency in turn concluded that Maurice did not meet the ten-year requirement and was thus not eligible for cancellation of removal.

Maurice nonetheless argues that his notice to appear was defective and did not stop the accrual of time for purposes of his

cancellation of removal.  On appeal to this Court, Maurice claims three defects:  he was "a minor at the time" he was served; "the absence of pleadings by the original IJ" assigned to his matter; and his case originally had been "administrative[ly] clos[ed] based on his eligibility for [t]emporary [p]rotected [s]tatus."

Maurice did not raise these arguments with the BIA. Maurice merely asserted that his notice to appear was deficient and cited Pereira, where the Supreme Court held that notices to appear that omitted the time and place of a removal proceeding do not satisfy section 1229(a) and thus do not stop the clock on any period of continuous physical presence in the United States under section 1229b(d)(1)(A).  See 585 U.S. at 201-02.  The BIA naturally understood Maurice to be arguing that his notice to appear failed to designate the precise time and place of his removal proceeding as required by Pereira, and the BIA rejected that contention. Maurice did not present to the BIA any of the arguments that he now makes.  He therefore did not administratively exhaust these arguments, which in turn precludes us from considering them.  See, e.g., Silva v. Gonzales, 463 F.3d 68, 72 (1st Cir. 2006) ("[W]e may review a final order of the BIA only if 'the alien has exhausted all administrative remedies available to the alien as of right.' Under the exhaustion of remedies doctrine, theories insufficiently developed before the BIA may not be raised before this court."

(quoting 8 U.S.C. § 1252(d)(1))); <u>Garcia Sarmiento</u> v. <u>Garland</u>, 45 F.4th 560, 564-65 (1st Cir. 2022).

### III.

For the foregoing reasons, we grant the petition for review, **<u>vacate</u>** the agency's decision insofar as it pertains to adjustment of status, and **<u>remand</u>** to the BIA for further proceedings consistent with this opinion.